Chad A. SPLAWN, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 05–95–01102–CR, 05–95–01103–CR, 05–95–01307–CR and 05–95–01308–CR.

Court of Appeals of Texas, Dallas.

July 30, 1997.

J. Craig Jett, John H. Hagler, Dallas, for Appellant.

Sue Korioth, Patricia Poppoff Noble, Assistant District Attorneys, Dallas, for Appellee.

Before THOMAS, C.J., and LAGARDE and MORRIS, JJ.

## OPINION

LAGARDE, Justice.

Chad A. Splawn appeals his convictions of indecency with four children. In four points of error, appellant contends the trial court erroneously admitted evidence of extraneous offenses, limited his attorney's voir dire examination of the jury, failed to include a

definition of reasonable doubt in the jury charge, and failed to admonish him that his guilty pleas could result in deportation or denial of citizenship. Concluding that appellant's points of error are without merit, we affirm the trial court's judgments.

Appellant worked at a grocery store in Rowlett, Texas. The complainants are four young boys whose families shopped at the store. When each boy went to the store, appellant was friendly to the boy and his mother. Appellant would pick the boy up and hold him. Appellant would take the boy for a cookie or to the office while his mother shopped. Appellant would take the groceries to the car, buckle the boy into his seat belt, and tickle him. During these seemingly innocuous encounters, appellant fondled the boy's genitals.

Appellant befriended the family of two of the complainants who are brothers. Appellant went to their home on several occasions. Appellant took the brothers for rides in his car, allowing the boys to sit on his lap and steer. During these visits and drives, appellant fondled the boys' genitals. When the local newspaper reported appellant's arrest for indecency with the two brothers, the other complainants reported appellant's offenses against them.

Appellant was indicted for indecency with each of the four boys. In each case, appellant signed a judicial confession. In a single proceeding, appellant entered open pleas of guilty and a jury assessed punishment at two years' confinement in cause numbers 05–95–01102–CR and 05–95–01103–CR (trial court cause numbers F94–37972–PV and F94–37973–PV, respectively) and ten years' confinement, probated for ten years, in cause numbers 05–95–01307–CR and 05–95–01308–CR (trial court cause numbers F94–37976–SV and F94–37975–SV, respectively).

## ADMISSION OF EXTRANEOUS OFFENSES

In his first point of error, appellant contends that the trial court erred in admitting evidence of the extraneous offenses appellant committed against the four complainants on dates other than those alleged in the indictments. Appellant argues that evidence of the extraneous offenses should not have been admitted because the State did not provide appellant with the proper notice of its intent to introduce evidence of these offenses as required by article 37.07 of the Texas Code of Criminal Procedure. Appellant contends that the State's notice was defective because it failed to state the dates on which the extraneous offenses occurred or the number of extraneous offenses the State intended to use. *See* TEX.CODE CRIM. PROC. ANN. art. 37.07, § 3(g) (Vernon Supp.1997).

### *Waiver*

■ When a plea of guilty is voluntarily and understandingly made, all nonjurisdictional defects occurring prior to entry of the plea are waived. *Helms v. State*, 484 S.W.2d 925, 927 (Tex.Crim.App.1972); *Jolivet v. State*, 811 S.W.2d 706, 709 (Tex.App.—Dallas 1991), *aff'd per curiam*, 846 S.W.2d 847 (Tex. Crim.App.1993). The *Helms* rule applies to guilty pleas before a jury as well as before the court. *Pruitt v. State*, 476 S.W.2d 693, 693 (Tex.Crim.App.1972); *Carpenter v. State*, 477 S.W.2d 22, 23 (Tex.Crim.App.1972).

■ On March 9, 1995, appellant requested that the court order the State to provide appellant with notice of any extraneous offenses the State intended to use at trial. The record on appeal contains no trial court order to this effect. However, on April 6, 1995, the State did give appellant the requested notice. Upon receipt, appellant did not complain to the trial court of any defect in the notice. When the trial began on August 1, 1995, appellant entered his pleas of guilty to all four offenses without first complaining of any defect in the State's notice of extraneous offenses. On appeal, appellant complains of the admission of the extraneous offenses based solely on alleged defects in the notice. By entry of his pleas, appellant waived any defects in the notice. Appellant's first point of error is without merit.

### *Sufficiency of Notice*

■ Even if entry of appellant's guilty pleas did not waive defects in the notice, appellant's point would still be without merit.

Article 37.07, section 3(g) states, in relevant part:

> If the attorney representing the state intends to introduce an extraneous crime or bad act that has not resulted in a final conviction in a court of record or a probated or suspended sentence, notice of that intent is reasonable only if the notice includes the date on which and the county in which the alleged crime or bad act occurred and the name of the alleged victim of the crime or bad act.

TEX.CODE CRIM. PROC. ANN. art. 37.07, § 3(g) (Vernon Supp.1997).

The notice the State provided appellant listed the following extraneous offenses the State intended to use:

1. From April 1994—August 1994—Defendant has put hands down pants of [B.] and [L.S.] touching genitals on several occasions.

2. Defendant has touched [M.P.'s] genitals on at least one occasion at Brookshire's Grocery Store and one time at the baseball field. This occurred from May 1994 through July 10, 1994.

3. Defendant touched [D.H.'s] penis almost everytime [sic] he would go to the grocery store. This happened on a weekly basis, during an 18 month period prior to August, 1994.

4. Defendant put his hand inside the shorts of [J.S.] on June 17, 1990.

By giving the dates, "April 1994—August 1994," "May 1994 through July 10, 1994," "an eighteen-month period prior to August, 1994," and "June 17, 1990," the State included the dates on which the extraneous offenses occurred. By listing five victims and stating, "one occasion at Brookshire's Grocery Store and one time at the baseball field," and "on a weekly basis during an eighteen-month period," the State notified appellant of the number of offenses it intended to introduce. The State, therefore, complied with the notice requirements of article 37.07. We overrule appellant's first point of error.

## TIME LIMITATION ON VOIR DIRE OF JURY PANEL

■ In his second point of error, appellant argues that he was denied effective assistance of counsel because the trial court unduly limited his attorney's time for voir dire examination of the jury panel. Appellant contends that although each veniremember filled out both a questionnaire prepared and submitted by appellant and a juror information card, the trial court erroneously allowed him only thirty-six minutes to question the venire over his objection that he needed one hour. The State argues that appellant was not denied effective assistance of counsel, and the trial court did not abuse its discretion in limiting his time to conduct voir dire, because appellant pleaded guilty and was allowed to use his own questionnaire in jury selection.

■ The conduct of voir dire rests largely within the sound discretion of the trial court. *Cantu v. State,* 842 S.W.2d 667, 687 (Tex.Crim.App.1992), *cert. denied,* 509 U.S. 926, 113 S.Ct. 3046, 125 L.Ed.2d 731 (1993). Ordinarily, the trial court should give a defendant great latitude in questioning the jury panel during voir dire. *Guerra v. State,* 771 S.W.2d 453, 467 (Tex.Crim.App. 1988), *cert. denied,* 492 U.S. 925, 109 S.Ct. 3260, 106 L.Ed.2d 606 (1989). However, the trial court has the authority to impose reasonable restrictions on the exercise of voir dire examination for various reasons, among them to curb the prolixity of what can become the lengthiest part of a criminal proceeding. *Id.*

■ In reviewing a contention that the trial court abused its discretion in the time limitation imposed, three factors are relevant: 1) whether the defendant's voir dire examination reveals an attempt to prolong the voir dire; for example, whether the questions were irrelevant, immaterial, or unnecessarily repetitious; 2) whether the questions that the defendant was not permitted to ask members of the venire were proper voir dire questions; and 3) whether a defendant was precluded from examining jurors who served on the jury. *Ratliff v. State,* 690 S.W.2d 597, 600 (Tex.Crim.App.1985). Each case must be examined on its own facts. *Id.* A reason-

able time limitation for one case may not be reasonable for another. *Id.* The amount of time allotted is not, by itself, conclusive. *Id.*

We conclude that the trial court did not abuse its discretion in disallowing appellant's request for additional time. First, the record of the voir dire examination reveals an attempt to unnecessarily prolong the voir dire. The venire filled out juror information cards. In addition, the trial court allowed appellant to use his own preprinted questionnaire to elicit information from the venire prior to questioning them. Appellant could have included the four requested questions in his questionnaire. The trial court informed appellant's attorney of the thirty-minute time limit before counsel began questioning the venire. Counsel spent most of this thirty minutes asking questions such as, "Mr. Smith, what do you think of that?" Counsel could have easily asked the four omitted questions of the panel by better allocating his time. Appellant was even allowed additional time to question the venire in excess of the thirty minutes the trial court originally allowed. Furthermore, the trial court ended counsel's voir dire immediately after sustaining an objection by the State to one of counsel's questions of the panel. Counsel appeared to request more time to lessen the impact of this objection.

Second, although appellant made a bill of exception showing the four questions he was precluded from asking,[1] a skilled lawyer can always find more questions that are proper to ask prospective jurors. *Whitaker v. State,* 653 S.W.2d 781, 782 (Tex.Crim.App.1983). The fact that counsel can think of one more proper question should not transform a reasonable time limit into an unreasonable one. *Id.*

Finally, the record does not show that appellant was precluded from examining jurors who served on the jury. Each member of the venire filled out a juror information card and appellant's questionnaire. Appellant then used his thirty-six minutes of voir dire to question the entire venire. When making his bill of exception, appellant stated that he wanted to ask the four omitted questions of the entire venire. Appellant has not shown that he was precluded from questioning any particular veniremember who subsequently sat on the jury. Appellant, therefore, has not shown that he was harmed by the time restriction.

In light of the advance information provided counsel from the questionnaires and cards, the reasonable length of time given counsel, and appellant's failure to show harm, we hold that the totality of the voir dire reveals that the trial court did not err in refusing appellant's request for additional time. We overrule appellant's second point of error.

## JURY CHARGE

In his third point of error, appellant contends that the trial court erred in failing to include the definition of "reasonable doubt" in the jury charge at the punishment phase of trial.

### *Reasonable Doubt Instruction*

■ In *Geesa v. State,* the court of criminal appeals delineated and adopted an instruction on reasonable doubt that must be submitted to juries in all criminal cases, even in the absence of an objection or request by the State or the defendant, whether the evidence is circumstantial or direct. *See Geesa v. State,* 820 S.W.2d 154, 162 (Tex.Crim.App. 1991). This instruction informs the jury that the State must prove each and every element of the offense charged beyond a reasonable doubt. *Id.* The *Geesa* instruction also contains paragraphs that define reasonable doubt as follows:

---

1. A question is proper if its purpose is to discover a juror's views on an issue applicable to the case. *McCarter v. State,* 837 S.W.2d 117, 121 (Tex. Crim.App.1992). Appellant requested additional time to ask the venire 1) if they had known someone who was an adolescent or young adult who has had a behavioral, psychological, emotional, or substance abuse problem and whether that was accompanied by legal action, 2) wheth-

er adolescents or young adults should be treated the same or differently from older adults in the legal system, 3) whether the veniremembers have a friend or relative who has been involved in a treatment program for any behavioral, emotional, psychological, or substance abuse problems, and 4) whether the veniremembers had a close friend or relative or whether they themselves had worked in law enforcement.

A "reasonable doubt" is a doubt based on reason and common sense after a careful and impartial consideration of all the evidence in the case. It is the kind of doubt that would make a reasonable person hesitate to act in the most important of his own affairs.

Proof beyond a reasonable doubt, therefore, must be proof of such a convincing character that you would be willing to rely and act upon it without hesitation in the most important of your own affairs.

In the event you have a reasonable doubt as to the defendant's guilt after considering all the evidence before you, and these instructions, you will acquit him and say by your verdict "Not guilty".

*See id.* Recently, the court of criminal appeals held that when the burden of proof requires the jury to find guilt beyond a reasonable doubt, the court in *Geesa* intended to create an absolute systemic requirement that every charge contain the *Geesa* instruction. *See Reyes v. State,* 938 S.W.2d 718, 721 (Tex. Crim.App.1996). This absolute systemic requirement cannot be waived or forfeited and is not subject to a harm analysis. *Id.*

 Thus, the law is settled that at the guilt/innocence phase, the trial court must instruct the jury with *Geesa's* lengthy, comprehensive reasonable doubt instruction as to the primary offense in all criminal cases, even without an objection or request by any party. *George v. State,* 841 S.W.2d 544, 549 (Tex.App.—Houston [1st Dist.] 1992), *aff'd,* 890 S.W.2d 73 (Tex.Crim.App. 1994). The law is also settled that at the guilt/innocence phase, the trial court must instruct the jury regarding reasonable doubt as to extraneous offenses. *See Yates v. State,* 917 S.W.2d 915, 922 (Tex.App.—Corpus Christi 1996, pet. ref'd). However, Texas courts have not always held that the jury must receive the *Geesa* reasonable doubt instruction at the *punishment* phase. *See, e.g., Garcia v. State,* 901 S.W.2d 724, 731 (Tex. App.—Houston [14th Dist.] 1995, pet. ref'd) (State does not have to prove appropriate sentence beyond a reasonable doubt, so instruction on and definition of reasonable doubt improper at punishment phase); *but see Escovedo v. State,* 902 S.W.2d 109, 113

(Tex.App.—Houston [1st Dist.] 1995) (burden of proof instruction required at the punishment phase when required at guilt/innocence phase), *pet. ref'd,* 934 S.W.2d 145 (Tex.Crim. App.1996).

Recently, the court of criminal appeals analyzed the necessity of the *Geesa* reasonable doubt instruction at the punishment phase in *Mitchell v. State,* a case similar to the case at bar. *See Mitchell v. State,* 931 S.W.2d 950 (Tex.Crim.App.1996). In *Mitchell,* the appellant pleaded guilty to a jury, which convicted and sentenced him. *See id.* at 950. On appeal to the Texarkana Court of Appeals, the appellant argued that the trial court reversibly erred by not including an instruction on burden of proof or a definition of reasonable doubt as to extraneous offenses in the charge at the punishment phase. *See id.* at 951. The Texarkana Court of Appeals affirmed the trial court's decision to exclude both the instruction and the definition, reasoning that the trial judge determines whether an extraneous offense has been proven beyond a reasonable doubt only as a preliminary requirement for the admissibility of the evidence of the extraneous offense. *See id.* Because the judge makes this determination, the court of appeals held that the jury charge should contain neither the burden of proof instruction nor the reasonable doubt definition. *See id.*

The court of criminal appeals reversed the holding of the Texarkana Court of Appeals, holding that at the punishment phase, an instruction on reasonable doubt is required. *Id.* at 954. The court of criminal appeals agreed with the Texarkana Court of Appeals in its holding only to the extent that the trial judge must initially determine whether evidence of the extraneous offense is admissible, but the court of criminal appeals concluded that the role of the jury in determining whether the State has proven the extraneous offenses beyond a reasonable doubt has not been supplanted by the trial court. *Id.* Concluding that the jury is the exclusive judge of the facts, the court of criminal appeals held that the jury should be instructed on reasonable doubt at the punishment phase when requested. *Id.* However, the court of criminal appeals' opinion in *Mitchell* did not spe-

cifically address the primary issue presented in this case of whether the *Geesa definition of reasonable doubt* must also be included in the charge when the appellant pleads guilty, the charge at the punishment stage contains an otherwise appropriate burden of proof instruction as to extraneous offenses, and the appellant requests inclusion of the definition.

In deciding this issue, we note that relevant case law shows that the importance of a charge on reasonable doubt has increased, not decreased, with the passage of time. *See George*, 841 S.W.2d at 549. We also note the court of criminal appeals' statement in *Mitchell* that the use of extraneous offenses during the punishment phase should be analogous to that of the guilt/innocence phase of trial regarding burden of proof. *See Mitchell*, 931 S.W.2d at 954. Given the importance of the reasonable doubt charge, we hold that the *Geesa* paragraphs defining reasonable doubt as to extraneous offenses must be included in the jury charge at the punishment phase when requested, especially when an appellant pleads guilty and the jury receives only one charge.

In this case, the jury charge at punishment included an instruction on reasonable doubt as to the extraneous offenses, stating:

> You are instructed that certain evidence may have been admitted before you of criminal conduct and/or bad acts committed by the defendant other than the offense for which he is on trial. In that regard, you are instructed that you may not consider such evidence for any purpose unless you first find and believe from the evidence beyond a reasonable doubt that the defendant committed said criminal conduct or bad acts, if any were committed, and even then you may only consider the same in evaluating the context in which the alleged conduct occurred, and in determining the credibility of the witnesses. If you do not so find or believe the evidence, you must wholly disregard such evidence.

Appellant objected to the charge, requesting that the *Geesa* definitional paragraphs also

be included. The trial court overruled appellant's objection and denied appellant's request. We conclude that the trial court erred in refusing appellant's request to include the *Geesa* definition of reasonable doubt in the jury charge at punishment. We therefore turn to an analysis of whether this error harmed appellant.

### Harm Analysis

We are mindful of the court of criminal appeals' decision in *Reyes* that exclusion from the charge of the instruction on reasonable doubt at the guilt/innocence phase is error that is not subject to a harm analysis. *See Reyes*, 938 S.W.2d at 721. However, in *Mitchell*, which was decided shortly before *Reyes*, the court of criminal appeals reversed the lower court's decision and remanded the cause to the Texarkana Court of Appeals to conduct a harm analysis of the trial court's denial of the appellant's requested instruction on reasonable doubt when omitted from the charge at the punishment phase. *See Mitchell*, 931 S.W.2d at 954 (citing *Almanza v. State*, 686 S.W.2d 157 (Tex.Crim.App. 1984)). Furthermore, in *Matchett v. State*, a case decided after *Reyes*, the court of criminal appeals held that although certain types of error, by their nature, resist meaningful harm analysis and thus are categorically precluded from a harm analysis review, courts should make a case by case determination of whether *in fact* a meaningful harm analysis is possible for any particular case. *Matchett v. State*, 941 S.W.2d 922, 928 (Tex.Crim.App. 1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 2487, 138 L.Ed.2d 994 (1997).[2] The court of criminal appeals stated in *Matchett* that courts should base their decision to conduct a harm analysis on whether the violation could be documented in a record from which to meaningfully assess the effects of the violation. *See id.* The court reasoned that the presumption that all errors are harmful, along with the accompanying burden to rebut the presumption, are sufficient to safeguard rights of a truly unreviewable nature. *Id.*

---

2. *Matchett* discussed application of a harm analysis to cases involving legislative mandates and fundamental rights. *See Matchett*, 941 S.W.2d at 928. Although inclusion of the definition of rea-

sonable doubt in the jury charge at the punishment phase does not rise to the level of a legislative mandate or a fundamental right, we find the reasoning of *Matchett* persuasive in this case.

The question thus becomes whether the record before us affords us the opportunity to conduct a meaningful harm analysis. In this case, the record on appeal includes the transcripts from all four cases. The record also includes the statement of facts from the single proceeding in which appellant entered his guilty pleas and was convicted and sentenced. We conclude that we can conduct a meaningful harm analysis under rule 81(b)(2) of the erroneous omission from the jury charge during the punishment phase of trial. See TEX.R.APP. P. 81(b)(2).

■■■■■ We therefore turn to an analysis of this case under the standards of *Almanza v. State*, under which jury charge error, whether due to an erroneous or incomplete charge, is generally examined. See *Almanza*, 686 S.W.2d at 157. When reviewing charge errors, an appellate court must undertake a two-step review: first, the court must determine whether error actually exists in the charge; and second, the court must determine whether sufficient harm resulted from the error to require reversal. *Id.* at 171. The standard to determine whether sufficient harm resulted from the charging error to require reversal depends upon whether appellant objected. *Id.* When there has been a timely objection made at trial, an appellate court will search only for "some harm." *Id.* The actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel, and any other relevant information revealed by the record of the trial as a whole. *Id.* We have already determined that the failure to include the definition of reasonable doubt in the charge at the punishment stage was error to which appellant timely objected. We therefore review the record to determine whether this error resulted in "some harm" to appellant.

The transcripts contain appellant's signed judicial confessions and applications for probation. Appellant's guilt of the primary offenses was therefore uncontested. The transcripts also contain the jury charge for the punishment phase of trial, which includes the instruction on reasonable doubt as to the extraneous offenses. Finally, the transcripts contain the judgments showing appellant's sentences. In two of the cases, the jury assessed punishment at two years' confinement, the minimum punishment for the offense. In the two other cases, the jury assessed punishment at ten years' probation.

The statement of facts from the single proceeding shows that the trial court instructed the jury at the outset of the trial that the State had the burden of proof in these cases. The statement of facts also shows that neither the State nor appellant emphasized the extraneous offenses in opening statements or closing arguments. In fact, the parties seemed primarily concerned throughout trial with the issue of whether appellant could be rehabilitated through counseling.

Including the definition of reasonable doubt in the jury charge at punishment could not 1) alter the fact that appellant signed written confessions, 2) alter the fact that appellant pleaded guilty, or 3) affect the range of punishment within which the jury could assess appellant's sentences. The jury imposed the minimum punishment in two of the cases and assessed a probated sentence in the other two cases. We conclude that this record shows beyond a reasonable doubt that the omission of the definition of reasonable doubt regarding any extraneous offenses appellant committed with the complainants on dates other than those in the indictments made no contribution to the outcome of the proceeding or to appellant's sentences. We overrule appellant's third point of error.

## ADMONISHMENT

In his final point of error, appellant argues that the trial court reversibly erred in failing to admonish him that his guilty pleas could result in his deportation or denial of citizenship.

■■■■ Article 26.13(a)(4) of the Texas Code of Criminal Procedure states that prior to accepting a guilty plea, the trial court must admonish the defendant of the fact that if the defendant is not a citizen of the United States, a plea of guilty may result in deportation, the exclusion from admission to this

country, or the denial of naturalization under federal law. Tex.Code Crim. Proc. Ann. art. 26.13(a)(4) (Vernon 1989). However, when the record conclusively shows that an appellant is a United States citizen and thus the admonishment is legally inapplicable to him, any error in failing to give the deportation admonishment is harmless beyond a reasonable doubt. *See Matchett*, 941 S.W.2d at 929; *see also Cain v. State*, 947 S.W.2d 262, 264 (Tex.Crim.App.1997).

Here, the record contains State's Exhibit B, an arrest report, which shows appellant's place of birth as Texas. The record, therefore, clearly shows that appellant was an undeportable citizen of the United States. The trial court's failure to admonish appellant according to article 26.13(a)(4) could not have affected or contributed to his conviction or punishment and was therefore harmless. *See Matchett*, 941 S.W.2d at 929; *Cain*, 947 S.W.2d at 264. We overrule appellant's fourth point of error.

We affirm the trial court's judgments.