In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-08-00171-CR


______________________________




RICHARD LEONAR WHYTUS, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 196th Judicial District Court


Hunt County, Texas


Trial Court No. 24,839




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Carter



MEMORANDUM OPINION



 Richard Leonar Whytus appeals from his conviction by a jury on seven charges of aggravated
assault with a deadly weapon. (1) See Tex. Penal Code Ann. § 22.02(a)(2) (Vernon Supp. 2008). The
evidence shows that, while quite intoxicated, he drove his car into a daycare full of napping children. 
Two workers and several of the children were injured. 

 Whytus has filed a single brief, in which he raises a single issue which is common to all of
his appeals. He argues that the trial court committed reversible error by refusing to submit his
requested charge on the lesser included offense of assault causing bodily injury.

 We addressed this issue in detail in our opinion of this date on Whytus' appeal in cause
number 06-08-00167-CR. For the reasons stated therein, we likewise conclude that error has not
been shown in this case.

 We affirm the judgment. 


 Jack Carter

 Justice


Date Submitted: February 26, 2009

Date Decided: February 27, 2009


Do Not Publish
1. Whytus appeals from seven convictions, all for aggravated assault with a deadly weapon,
cause numbers 06-08-00167-CR through 06-08-00173-CR. 



nel as a whole and asking questions of individual panel members eliciting specific
information. However, he still persisted in asking some, albeit fewer, open-ended
questions to selected venirepersons, such as: "Ms. Maloney . . . [h]ow do you put a value
on pain and suffering as a result of injury?" and "Ms. Coon . . . [s]ome people feel that
lawsuits have gotten out of hand, some plaintiffs sue everybody just to find the deepest
pockets. What is your reaction to that?" 

 Before completion of his voir dire questioning, the trial court informed counsel for
McCoy his time was up, but he would be given "about two minutes" more. Shortly
thereafter, the trial court interrupted counsel again to advise that his time was up. McCoy's
counsel then tendered to the court what he characterized as "a list of the general questions
that still need to be asked," but which appear to be the last two pages of his voir dire notes. 
The trial court's response to this tender was: "I think you have had plenty of time to ask
these. You chose a manner of questioning that prevented you from getting to them. So,
your motion is denied. I have given you multiple warnings about that."

 At the conclusion of Wal-Mart's counsel's voir dire examination, there was an
unrecorded bench conference with counsel after which McCoy's counsel requested, on the
record, permission to further question eight veniremembers relating to issues raised during
either his own questioning or during defense counsel's questioning. The trial court denied
this request. The lawyers were then given ten minutes in which to strike their jury lists,
after which there was another unreported bench conference. McCoy's counsel then stated
on the record that because of the court's refusal to allow him to ask further questions, he
was required to exhaust his peremptory challenges, resulting in three persons to whom he
objected serving on the jury.

 The case proceeded to trial, at the conclusion of which the court rendered a take-nothing judgment pursuant to the jury's verdict. McCoy filed a notice of appeal. After the
reporter's record was filed with this Court, but before the briefs were filed, McCoy filed a
motion to abate pursuant to Tex. R. App. P. 34.6(e), alleging there was a dispute between
the parties as to what occurred at three unreported bench conferences reflected in the
reporter's record and asking that the cause be abated to the trial court for a determination. 
This Court granted McCoy's uncontested motion and ordered the trial court to provide a
supplemental record. The trial court complied and filed a supplemental record consisting
of its findings, an affidavit by the court reporter explaining why the questioned bench
conferences were not reported, and conflicting affidavits from trial counsel for McCoy and
Wal-Mart concerning those conferences. Because the motion to abate was unopposed,
and because Rule 34.6(e)(3) authorizes the appellate court to submit such disputes to the
trial court for resolution, we will, under the circumstances of this case, accept that court's
findings as conclusive regarding what occurred at those three bench conferences.

 The first bench conference in question occurred after the veniremembers had given
their personal background recitations and just before McCoy's counsel commenced his voir
dire examination. At that conference, according to the trial court's findings, the court
advised counsel that "each side should allot thirty minutes for questioning. Challenges for
cause would be taken up at the bench at the conclusion of voir dire."

 The second bench conference in controversy occurred after Wal-Mart's counsel
completed his voir dire examination and the lawyers were invited to the bench "for
challenges for cause." In its findings, the trial court found that at this conference counsel
for McCoy requested more time to ask additional questions and the court informed him that
he had used his time and that he should make his challenges.

 The third questioned bench conference occurred after the court had given the
lawyers ten minutes in which to strike their jury lists, but before McCoy's counsel turned in
his list to the clerk. The court found that at this conference McCoy's counsel requested an
opportunity to make a record of those jurors to whom he objected, but who served on the
jury because the court denied his challenges for cause. The court permitted him to make
this record. 

 The trial court's findings further state its reasons for denying McCoy's counsel's
request for additional questioning of the individual veniremembers:

 [McCoy's counsel's] questioning failed to give rise to a challenge for cause
which he could then develop by individual voir dire if necessary later at the
bench. The discussion at the bench amounted to the Court informing
Counsel that he had used more than his allotted time, he persisted in using
time on nonspecific open-ended questions rather than [sic], and that he had
used up his time for questioning.


 Generally speaking, the scope of voir dire examination is a matter which rests
largely in the sound discretion of the trial court. Babcock v. Northwest Mem'l Hosp.,
767 S.W.2d 705, 709 (Tex. 1989). A court abuses its discretion when its denial of the right
to ask proper questions on voir dire examination prevents determination of whether
grounds exist to challenge for cause or denies intelligent use of peremptory challenges. 
Id. To obtain a reversal, an appellant must show that the trial court abused its discretion
and that the error was calculated to cause and probably did cause the rendition of an
improper judgment. Tex. R. App. P. 44.1; Babcock, 767 S.W.2d at 709.

 In reviewing a contention that the trial court abused its discretion by not allowing a
party to ask further questions of the veniremembers to discover any bias or prejudice, three
factors are relevant: 1) whether a party's voir dire examination reveals an attempt to
prolong the voir dire; for example, whether the questions were irrelevant, immaterial, or
unnecessarily repetitious; 2) whether the questions that were not permitted were proper
voir dire questions; and 3) whether the party was precluded from examining
veniremembers who served on the jury. Torres v. State, 4 S.W.3d 832, 835-36 (Tex.
App.-Texarkana 1999, pet. ref'd); Splawn v. State, 949 S.W.2d 867, 871 (Tex. App.-Dallas
1997, no pet.).

 In this case, there is evidence that McCoy's counsel's approach to voir dire had the
effect of unnecessarily prolonging it. He spent considerable time asking individual
veniremembers open-ended questions designed to elicit answers in the form of opinions,
and on occasion he would then ask other veniremembers to state their opinions about the
opinions they had just heard. Early on in counsel's voir dire examination, it was apparent
that he understood-correctly or not-that he would be allowed to ask follow-up questions
later in front of the judge at the bench. However, ten minutes into his voir dire examination,
the court warned him that he was wasting time and would run out of time if he persisted
in the approach he was taking, and warned that he had already used more than ten of his
allotted thirty minutes. Although altering his approach slightly after this warning, counsel
still posed open-ended questions to certain venirepersons that had the effect of prolonging
voir dire. 

 At the end of the thirty minutes of allotted time, counsel requested more time in
which to ask some general questions. The court denied this request. At the end of
defense counsel's voir dire examination, McCoy's counsel made a record of the eight
veniremembers he wanted to further question and the purposes of this additional
questioning. The trial court denied the request as to each of the eight persons. The initial
questions and answers of these eight venirepersons and counsel's request for additional
questioning are as follows:

1.


 [WAL-MART'S COUNSEL]: Mr. Mersino, how do you know him
[Pinkie Palmer, one of Wal-Mart's lawyers]?


 PROSPECTIVE JUROR: He has represented our company in a few
matters.


 . . . .


 [McCOY'S COUNSEL'S REQUEST]: Mr. Mersino . . . said that
Mr. Palmer represented his company and I need to ask questions from him
to determine whether or not there is a bias or prejudice. 


2.



 [McCOY'S COUNSEL]: Ms. Slusher . . . have you ever known
someone who has lost their ability to work as a result of an injury?


 PROSPECTIVE JUROR: Yes.


 [McCOY'S COUNSEL]: Do you feel like a person like that should
be compensated for their lost wages?


 PROSPECTIVE JUROR: Uh - - yeah. In a lot of instances, I think
sometimes things are falsely put out - - information. But, most of the time,
I think they should be.


 [McCOY'S COUNSEL]: When you say "things are put out - - false
information?"


 PROSPECTIVE JUROR: Well, I think sometimes we exaggerate. 
. . . Our minds just kind of takes [sic] over and we don't see things as clearly
then for ourselves.


 [McCOY'S COUNSEL]: Certainly. Would it have a role with you if
doctors, medical people were involved in sharing with you the damages that
a person has suffered?


 PROSPECTIVE JUROR: I think so.


 . . . .


 [McCOY'S COUNSEL'S REQUEST]: It had to do with people that
have been injured and they think they are hurt worse than they really are and
I need to determine whether or not there is bias about this type of injury.


3.



 [WAL-MART'S COUNSEL]: . . . [H]as anybody here ever had a
bad experience at Wal-Mart? . . . Mr. Ormes, you kind of shook your head. 
What is your tale of woe?


 PROSPECTIVE JUROR: I was injured in Wal-Mart. . . . I jumped up
to pull a box off. It came down and hit me. It was stupid on my part. 


 . . . .


 [McCOY'S COUNSEL'S REQUEST]: . . . [W]e need an opportunity
to determine how he would feel about Mrs. McCoy's situation, whether or not
she was stupid and whether or not he has any pre-conceived ideas. 


4.



 [McCOY'S COUNSEL]: . . . Mr. Hook? . . . You are a Church of
Christ minister. . . . Why would someone choose to blame a company for
their injuries rather than accept responsibilities for themselves?


 PROSPECTIVE JUROR: I kind of agree with the statement that I
don't have enough information to make a statement. I feel for the most part,
we don't accept enough responsibility for our own actions. So many times
we just do not blame ourselves and too quick to point our fingers elsewhere.


 . . . . 


 [McCOY'S COUNSEL'S REQUEST]: Mr. Hook . . . who is a Church
of Christ minister. He . . . commented that people should be more
responsible for their own actions. 


5.



 [McCOY'S COUNSEL]: . . . [W]hy would somebody choose to
blame a company for their injuries, rather than accept responsibility
themselves? Mr. Anders [sic], what is your reaction to that?


 PROSPECTIVE JUROR: . . . Do they want money or - - I don't have
enough to make a judgment.


 [McCOY'S COUNSEL]: . . . Not asking you to make a judgment at
this point. Just sort of asking you what thoughts go through your mind when
you hear something like that.


 PROSPECTIVE JUROR: Well, on a day to day basis, I work for
SWEPCO and . . . . They have people injured from time to time. Where
something fell.


 [McCOY'S COUNSEL]: Customers?


 PROSPECTIVE JUROR: Customers. Sometimes it actually didn't
happen and sometimes it did and sometimes, you know, it is our fault and if
it is we have to take care of it. 


 . . . .


 [McCOY'S COUNSEL'S REQUEST]: Mr. Andres . . . said that he
works for a company that has people that are injured. He says people cause
their own problems and it needs to be explored as to whether there is a bias
or prejudice there. 


6.



 [McCOY'S COUNSEL]: Mr. Brown, you heard Mr. McClenny's
statement about how a customer should feel when they walk into a public
store. How do you feel about that?


 PROSPECTIVE JUROR: I think you need to watch out for yourself.


 [McCOY'S COUNSEL]: Well, tell us what you mean by "you need
to watch out for yourself?"


 PROSPECTIVE JUROR: I used to work retail and you would put
things on the rack and people would check things out and it would fall down.


 [McCOY'S COUNSEL]: . . . How would you feel about a company
that actually has one of those tests and it is called a bump test. You are
supposed to bump it and it not come off.


 PROSPECTIVE JUROR: You get all kinds of people in a store.


 [McCOY'S COUNSEL]: . . . Do you think that your feelings about
having worked in retail would color how you would view the evidence in this
case?


 PROSPECTIVE JUROR: I don't know. It depends on the evidence.


 [McCOY'S COUNSEL]: And I understand and it would be improper
for me at this point to get you to commit to the evidence in this case. . . .
But, tell us generally how - - what your experiences has [sic] been about
customers versus what the responsibilities are for a store in this situation?


 PROSPECTIVE JUROR: . . . You need to offer a safe, working
place; but you can't prevent idiots from coming in the store.

 

 [McCOY'S COUNSEL'S REQUEST]: Similar situation with . . .
Mr. Brown [as with prospective juror Andres].


7.



 [McCOY's COUNSEL]: . . . Mr. Peacock . . . have you ever known
someone who has been injured and lost their ability to work due to the
injury?


 PROSPECTIVE JUROR: I have known some that have claimed that
they were injured. Yes.


 [McCOY'S COUNSEL]: . . . Have you ever known a family member
or a friend or a neighbor who has been injured and lost their ability to work?


 PROSPECTIVE JUROR: Yes.


 [McCOY'S COUNSEL]: The ones that you know about, tell us how
you knew about that?


 PROSPECTIVE JUROR: They worked for me.


 . . . .


 [McCOY'S COUNSEL]: What was that business?


 PROSPECTIVE JUROR: I worked for Dresser Oil Tools in Longview. 


 . . . .


 [McCOY'S COUNSEL'S REQUEST]: . . . Mr. Peacock. He is a
supervisor for a plant and I need to determine whether there is any bias or
prejudice.



8.



 [WAL-MART'S COUNSEL]: . . . Ms. Maloney, how do you know
Pinkie [Palmer]?


 PROSPECTIVE JUROR: We attend the same church. 


 [WAL-MART'S COUNSEL]: You are not going to hold that
against him; are you?


 PROSPECTIVE JUROR: No.


 . . . .


 [McCOY'S COUNSEL'S REQUEST]: . . . Ms. Maloney says she
knows Mr. Palmer. Says she knows him well. We need to explore whether
she can be fair based on whether there is a bias. Mr. Palmer being one of
the attorneys for Wal-Mart.


 Many of the areas identified in counsel's requests were proper for additional
questioning. However, the trial court found, and we agree, that the initial questioning failed
to develop a challenge for cause and that counsel would have had sufficient time to further
explore these matters had he not spent so much time asking improper questions to
individual venirepersons. Attorneys have a duty to appropriately budget their time for voir
dire questioning within the reasonable limits set by the trial court. Whitaker v. State, 653
S.W.2d 781, 781 (Tex. Crim. App. 1983); Torres, 4 S.W.3d at 836; Thacker v. State, 889
S.W.2d 380, 391 (Tex. App.-Houston [14th Dist.] 1994, pet. ref'd). Having wasted
valuable time asking open-ended questions of individual veniremembers, counsel cannot
now complain of being deprived of the opportunity for further questioning. 

 Three of counsel's requests for additional questioning pertained to matters raised
by defense counsel in his voir dire examination. Two of these had to do with panel
members who were acquainted with one of Wal-Mart's attorneys. The other had to do with
a panel member who had a bad experience at Wal-Mart. There is no indication that
McCoy's counsel was prohibited from pursuing these matters during his own voir dire
questioning. The only plausible reasons for his failure to do so are that he ran out of time,
or it did not occur to him to ask about these matters. Either way, his inability to question
these panel members regarding these matters was of his own making. The trial court did
not abuse its discretion in not allowing counsel to reopen his voir dire examination with
these panel members on these topics.

 The final question is whether counsel was precluded from examining
veniremembers who actually served on the jury. McCoy's counsel individually examined
all eight of the veniremembers he wanted to further question. Three of those eight served
on the jury: Willa Slusher, Aven Hook, and Roberto Maloney. Counsel requested
additional time to question Slusher concerning her possible bias about the type of injury
involved. However, counsel had already developed considerable information from Slusher
on this subject, and he failed to specify any additional questions he wanted to ask. 
Further, when asked about damages, Slusher indicated she would follow the evidence. 
McCoy's counsel's request to further question Hook had to do with Hook's expressed
opinion that people should be responsible for their own actions. Again, counsel failed to
state any additional specific questions he wanted to ask. Finally, McCoy's counsel
requested additional time to question Maloney regarding her acquaintance with one of
Wal-Mart's attorneys, which was disclosed during defense counsel's questioning. Again,
there is no showing that McCoy's counsel was prohibited from inquiring into any
relationship that any of the panelists had with any of the attorneys in the case had he
chosen to do so. Further, Maloney indicated at the time of the disclosure that her
acquaintance with the attorney would not influence her as a juror. We find that counsel
was not precluded from examining veniremembers who served on the jury. 

 The trial court did not abuse its discretion in denying counsel's requests for
additional questioning. McCoy's sole point of error is overruled.

 By our holding, we do not intend to imply that a trial court's discretion in the conduct
of voir dire examination is unlimited. We recognize that voir dire questioning is possibly
the most important part of any jury trial and that the parties in any given case should be
afforded full opportunity to examine the jury panel with no more interference from the trial
court than necessary. We also recognize that not all lawyers approach voir dire
questioning the same way, nor should they. Our system is capable of accommodating a
variety of strategies in selecting a jury, and the innovative advocate should not be punished
for not doing it the same way an opponent does, or even the same way the trial court
would. However, counsel should always be realistic and give due respect to the court,
opposing counsel, the veniremembers, and other litigants. With our dockets over-burdened and the courts constantly pressured to keep the cases moving, the trial courts
must be given considerable latitude in controlling voir dire examinations, so that the time
allotted for this important part of the trial is put to its best use. Voir dire questioning is
typically done while other parties and their counsel wait their turn. In a rural jurisdiction,
such as the one where this case was tried, it is not uncommon for a single jury panel to sit
through the voir dire of multiple cases in a single day. 

 We recognize that justice should never be sacrificed for the sake of expediency. 
The parameters set for voir dire questioning should always be fair and reasonable, and
take into consideration the complexity and uniqueness of each case. These boundaries
should also be flexible, subject to exceptions as justice and the circumstances require.

 Because voir dire questioning is such an important part of the proceeding, counsel
should plan for it well in advance and be prepared to elicit from the veniremembers all
necessary information within the parameters set by the court. The prudent lawyer will
recognize that this may require some adjustment of the voir dire questioning from what that
lawyer would prefer to what must be done within the time allotted. 

 In this case, it appears there was an initial misunderstanding on the part of McCoy's
counsel as to the procedure to be followed by the trial court in ruling on challenges for
cause. However, ten minutes into his voir dire questioning, the trial court warned that he
would not be able to complete his questioning in the thirty minutes allotted if he persisted
in the approach he was taking. Counsel should have heeded the trial court's warning and
adjusted his voir dire examination to accommodate the court's parameters. Had he done
so, he could have asked the questions that his own unfortunate choice precluded him from
asking. This was not a complex case, nor was it so unique as to require extraordinary
consideration in voir dire questioning. Defense counsel had no difficulty complying with the
thirty minutes allotted. We perceive no reason why McCoy's counsel could not also
comply.

 We affirm the judgment.


 Donald R. Ross

 Justice


Date Submitted: September 20, 2001

Date Decided: October 16, 2001


Publish