**MODIFY and AFFIRM; and Opinion Filed January 31, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-12-00964-CR

### CHARLES RAY BACON, Appellant
### V.
### THE STATE OF TEXAS, Appellee

### On Appeal from the 282nd Judicial District Court
### Dallas County, Texas
### Trial Court Cause No. F11-31310-S

## MEMORANDUM OPINION
Before Justices Bridges, Fillmore, and Lewis
Opinion by Justice Lewis

A jury found appellant Charles Ray Bacon guilty of driving while intoxicated, and the trial judge assessed his punishment at confinement for eight years. In this Court, appellant contends the trial court committed reversible error in its rulings on two voir dire issues and in failing to suppress blood alcohol evidence at trial. Because the issues in this appeal involve the application of well-settled principles of law, we issue this memorandum opinion. *See* TEX. R. APP. P. 47.4. We modify the judgment to conform to the record, and—as modified—we affirm.

**Voir Dire Issues**

*Misstatement of Legal Standard*

In his first issue, appellant argues the trial court erred in overruling his objection to the State's voir dire "misstatement of the law" concerning the legal standard of intoxication. Appellant made his objection in the following context:

> [THE PROSECUTOR]: Now, the law says that the loss of any normal use of your mental or physical faculties is intoxication, okay? Now, that's a pretty low standard. If you think about it, you've lost any of your normal use. What do y'all think about that? What does that mean to you?
>
> VENIRE PERSON: It's the law. The law decides it.
>
> [PROSECUTOR]: It's the law.
>
> VENIRE PERSON: It decides the basis of it.
>
> [THE PROSECUTOR]: Yeah, you've got the tests that are going to tell you. But what if you don't have the test? Are we -- are we okay with the low standard that if you've lost any of your normal mental or physical faculties?
>
> [DEFENSE COUNSEL]: Judge, I'm going to object. That['s] not what the law says. It's says -- it's not referenced anywhere in the statute.
>
> THE COURT: I get it. This is just voir dire. As long as you agree to follow the law as I give it to you. Remember, what the attorneys say is not -- not the law or evidence, but you will get a copy of the law. But you get a copy at the end of the review. Just understand that. Your objection's overruled.

In this Court, appellant argues the State clearly misstated the law when the prosecutor told the venire that not having the normal use of mental or physical faculties by reason of introduction of alcohol into the body is a "low standard." The penal code defines "intoxicated" as:

> (A) not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body; or
>
> (B) having an alcohol concentration of 0.08 or more.

TEX. PENAL CODE ANN. §49.01(2) (West 2011). In the prosecutor's statement quoted above, she asked the jury to consider the standard for determining intoxication "if you don't have the test" to establish the degree of alcohol concentration. Thus, she was focused on the first definition: "not having the normal use of mental or physical faculties by reason of the introduction of alcohol . . . into the body." *Id*. §49.01(2)(A). We conclude the prosecutor did not misstate this standard.

The prosecutor did characterize the standard as a low one. However, as the trial court emphasized following appellant's objection, what the attorneys say is neither evidence nor the law. It is the responsibility of the trial court—not the attorneys—to instruct the jury on the law applicable to the case. *See* TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007). In this case, the trial court had read the statutory legal standard for intoxication to the panel as voir dire began. Subsequently, the court's charge defined "intoxicated" exactly as the statute did. The prosecutor's statement of the legal standard comported with that definition in the charge; her characterization of the standard amounted to no more than argument.

We note as well that appellant objected to the prosecutor's characterization of the standard as "low" only once. The prosecutor had similarly referred to the standard once before the objection, and she repeated the characterization at least three more times during voir dire without objection from appellant. Texas law requires a party to continue to object each time the same objectionable conduct occurs. *See Martinez v. State*, 98 S.W.3d 189, 193 (Tex. Crim. App. 2003); *see also Ethington v. State*, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991). Thus, even if the prosecutor's characterization of the standard had been error, appellant did not properly preserve his complaint. *See Martinez*, 98 S.W.3d at 193.

We overrule appellant's first issue.

In his second and third issues, appellant contends the trial court violated his rights under both the United States Constitution and the Texas Constitution by limiting appellant's counsel to fifteen minutes for voir dire questioning.

The record establishes the jury panel completed questionnaires in this case. The trial court also conducted its own voir dire of the panel. The court's remarks and questions fill almost twenty pages in the record and address a number of fundamental legal topics: the court's responsibility to tell jurors what the law is; the presumption of innocence; the charges against appellant in this case; the State's burden of proof; what is and what is not evidence; the punishment range for the charged offense and factors that may be considered in assessing punishment; and an understanding of bias. Throughout the court's remarks, it stressed that for the system to work, jurors must be fair to both sides and follow the law as the court gives it to them. The court completed its voir dire by requesting and receiving a verbal commitment from each potential juror that he or she would in fact be fair to both sides and would follow the law.

The court then told the panel each side would have "about fifteen minutes" to talk and ask questions about "certain aspects of this case that they think [are] important to make sure you can follow the law and be fair to both sides." When the court told counsel for the State that her time was up, the record reflects the following exchanges took place:

[PROSECUTOR]: Just a little more?

THE COURT: It's been 15 minutes. You all are delving into evidence. Your questions are questions that are presented during the trial. You're asking questions about things that -- that are factual hypotheticals that we can go on forever on this. That's not -- the question is this: Are you going to follow the law and be fair the both sides? That's all I'm concerned about, and we're -- we've narrowed this -- that now. Now, it's the Defense's turn to go. You've got 15 minutes.

[DEFENSE COUNSEL]: Could we approach, Judge, briefly?

(There was an off-the-record Bench conference between the Court and the parties.)

–4–

Immediately thereafter, counsel for appellant began his voir dire, which was limited to fifteen minutes. The court released the panel for a lunch break and told appellant's counsel: "All right. Put your stuff on the record." Counsel then identified a number of topics on which he wished to question jurors, including their individual attitudes toward drinking and their history with law enforcement. Counsel also complained that he had not had time to review all the jurors' questionnaires before his voir dire, so he was unable to ask follow-up questions concerning remarks on those questionnaires. Counsel offered one specific example of a panel member whose questionnaire raised significant concerns about that member's ability to be fair. Counsel stated time constraints prevented his questioning that panel member to elicit information allowing him to be stricken for cause. Instead, counsel was forced to use a strike to remove that panel member and to accept another juror, whose questionnaire stated he or she believed that any alcohol consumed renders a driver intoxicated.

The State argues appellant waived his complaint concerning limited time to voir dire because he did not state on the record that he objected to the time allowed for voir dire and did not specifically request additional time for questioning. We disagree. Although we cannot know if counsel specifically objected and asked for more time during the bench conference following the State's voir dire, we know the judge prompted counsel to make a record of his complaints immediately following the defense voir dire. More importantly, counsel's statements on the record unquestionably conveyed to the trial court that the time limitation had prevented his conducting the voir dire he desired and that he believed the limitation harmed his client by placing at least one individual on the jury who may have held views prejudicial toward appellant. We conclude appellant made an adequate record below to preserve that complaint. *See Everitt v. State*, 407 S.W.3d 259, 263 (Tex. Crim. App. 2013) ("all the party has to do to avoid the forfeiture of a complaint on appeal is to let the trial judge know what he wants, why he thinks he

is entitled to it, and to do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it"). We will not employ a "hypertechnical" requirement for error preservation. *See id.*

However, in this Court appellant has not complained that he was forced to accept one juror with a potentially unfavorable view of intoxication because of the time limitation. Instead, appellant casts his complaints as constitutional violations of his Sixth Amendment right to effective counsel and his state constitutional right to be represented by counsel. Our review of the record establishes that appellant never raised these complaints in the trial court. When a party asserts a different complaint on appeal than his objection made at trial, the party waives the issue. *Jones v. State*, 111 S.W.3d 600, 604 (Tex. App.—Dallas 2003, pet. ref'd). An objection stating one legal basis may not be used to support a different legal theory on appeal. *Rezac v. State*, 782 S.W.2d 869, 870 (Tex. Crim. App. 1990). Accordingly, we conclude appellant did not preserve the constitutional right-to-counsel complaints that he alleges in issues two and three.

However, even if we were to address the complaint appellant did preserve—that he was forced to accept a juror who may have held a view of intoxication that was unfriendly toward him—we would overrule these two issues. We review a trial court's limitations on the voir dire process under an abuse of discretion standard. *Cockrum v. State*, 758 S.W.2d 577, 584 (Tex. Crim. App. 1988). A trial court always has the authority to impose reasonable restrictions on the exercise of voir dire examination. *Splawn v. State*, 949 S.W.2d 867, 871 (Tex. App.—Dallas 1997, no pet.). We examine each case on its own facts, understanding that a reasonable time limitation for one case may not be reasonable for another. *Id.* at 871–72. "The amount of time allotted is not, by itself, conclusive." *Id.* at 872.

Here, potential jurors filled out questionnaires giving counsel significant information before voir dire began.[1] Then the trial court conducted a lengthy threshold voir dire on its own. The State's voir dire dealt primarily with the standard for intoxication and the ways in which the State could prove intoxication. Then defense counsel addressed the following topics during his allotted time: the notion that DWI is the penal code's only "opinion crime"; the experience of being pulled over, questioned concerning one's drinking, and taking field sobriety tests; whether each of the panel members would hold against appellant the fact that he had twice previously been convicted of DWI; and the reasonable-doubt standard.

Counsel complained he was not able to address other topics: the drinking habits of each individual juror; more about the loss of normal functions and the physiological effects of alcohol; and follow-up questions from questionnaire responses, including the nature of prior criminal-jury service, prior alcohol-related incidents in members' lives, and relationships with individuals in law enforcement. We cannot say these topics are irrelevant. However our review of the record establishes that most of these topics were addressed to some extent in the voir dire process, and any of these topics could have been addressed if they had been considered a priority by counsel.

Again, appellant's specific complaint at trial was that he was required to accept a juror—juror number five—who had expressed an unfavorable understanding of intoxication in the questionnaire answered before the voir dire. But the panel received significant instruction during voir dire concerning the legal definition of intoxication. The trial court gave an appropriate definition in its charge. All of the potential jurors told the judge they would follow the law, and we have no reason to assume appellant's unwanted juror did not do so. Indeed, appellant's counsel stated he had reviewed the first twenty-five questionnaires before voir dire began, so he

---

[1] The record does not contain a juror questionnaire form. However, defense counsel's remarks indicate the form contained questions about a panel member's views concerning what constitutes intoxication, opinions of individuals involved in the justice system, and relationships with individuals in law enforcement.

was aware of juror number five's misunderstanding concerning intoxication. He could have used a fraction of his time to be sure the potential juror was now committed to the legal definition of intoxication. We cannot say the trial court's time limits in this case prevented appellant from seating a fair jury. Nor can we say, given the facts and record in this case, that the court's time limit was unreasonable and an abuse of discretion. *See Splawn*, 949 S.W.2d at 871.

We overrule appellant's second and third issues.

### Suppression of Blood Alcohol Evidence

In his fourth and fifth issues, appellant again contends the trial court violated both the United States Constitution and the Texas Constitution, this time by denying appellant's motion to suppress blood evidence of his alcohol consumption. Appellant's specific complaint is that he did not voluntarily consent to having his blood drawn.

Drawing blood from a suspect is a search and seizure within the scope of the Fourth Amendment to the United States Constitution and article I, section 9 of the Texas Constitution. *State v. Mosely*, 348 S.W.3d 435, 440 (Tex. App.—Austin 2011, pet. ref'd) (citing *Schmerber v. Cal.*, 384 U.S. 757, 767 (1966)). The validity of a defendant's consent to search is a question of fact to be determined from the totality of the circumstances. *Meekins v. State*, 340 S.W.3d 454, 458 (Tex. Crim. App. 2011). Federal law requires the State to prove voluntary consent by a preponderance of the evidence; article I, section 9 of the Texas Constitution, however, requires the State to prove consent by clear and convincing evidence. *Montanez v. State*, 195 S.W.3d 101, 105 (Tex. Crim. App. 2006). We review the trial court's denial of a motion to suppress with "almost total deference" to the court's determination of facts supported by the record when the court's findings (whether historical fact findings or mixed questions of law and fact) are based on an evaluation of credibility and demeanor. *Id.* at 106. We conduct a de novo review where the resolution of mixed questions of law and fact does not turn on an evaluation of

credibility and demeanor. *Id.* We must view the evidence in the light most favorable to the trial court's ruling. *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007).

The record indicates, and all parties agree, the arresting detective read the appropriate statutory warnings to appellant. Those warnings address a person's right to refuse to give a specimen for alcohol-testing purposes and the consequences of such a refusal. During the hearing on appellant's motion to suppress, a recording of his arrest was played and the arresting detective testified. The recording and the detective's testimony confirmed that, after reading the warnings, the detective stated: "Breath or blood? I'm requesting you take a breath or blood." Appellant responded, "I want breath." At this point in time, however, the detective was contacted by his superior who told him a blood-draw facility had been set up in the next town and they could get appellant "in and out fast."[2] The detective testified appellant was "extremely cooperative," and he agreed to the blood test. (The recording device had been turned off before this exchange occurred.) The defense characterized this requirement to change from breath test to blood test as coercion; the detective testified appellant willingly changed his mind when presented with the new information. The trial court found that appellant agreed to provide a blood specimen and concluded appellant voluntarily consented to the blood draw.

Appellant first argues that when the detective "request[ed] you take a breath or blood," appellant was essentially coerced into giving some type of specimen. He contends the detective gave him those two options—breath or blood—but failed to give him the necessary third option, i.e., to refuse to give any specimen. We disagree. It is undisputed that the detective read appellant the statutory warnings required in a DWI arrest before breath or blood specimens may be taken. Those warnings informed appellant of the option of refusing to give a specimen.

---

[2] The blood-draw facility was part of a holiday "no refusal" weekend, when persons who refused to give a specimen could be brought before a judge and, if appropriate, a warrant would be signed to require a blood draw.

Moreover, the warning form—which appellant attaches as an exhibit to his brief—also includes the very request at issue in this case. Following the list of warnings and information about requesting a hearing, the form states:

> I certify that I have informed you both orally and in writing of the consequences of refusing to submit to the taking of a specimen or providing a specimen. I have provided you with a complete and true copy of this statutory warning.
>
> I am now requesting a specimen of your ☐ Breath ☐ Blood

The arresting detective read appellant the required warnings informing him that he could refuse to give a specimen. He continued reading the approved form and requested a specimen of appellant's breath or blood. That request was not a variance from the form; it was not superfluous language that somehow invalidated the statutory warnings.[3] In this case, the undisputed record supports the trial court's finding that—based upon the totality of the circumstances—appellant was told he had the right to refuse both the blood draw and the breath test.

Appellant also argues that although he agreed to take a breath test, he did not voluntarily agree to the blood draw that was ultimately used to measure his blood alcohol level. Again, we disagree. The trial court found appellant voluntarily consented to the blood draw. We must defer to the trial court's determination of that mixed question of law and fact if it is based on the court's evaluation of credibility and demeanor. *See Montanez*, 195 S.W.3d at 106. The court found the detective was contacted by his superior, who asked the detective to request a blood specimen. The court then found:

> Although not on the video, [the detective] again asked [appellant] whether [appellant] wants to provide a blood specimen or breath specimen, and [appellant] agreed to provide [a] blood specimen.

---

[3] Although the detective acknowledged adding some of his own words while reading the warnings, we defer to the trial court's finding that those words did not render the consent involuntary. The essence of appellant's complaint—that he was presented with two options (blood or breath) rather than three (blood, breath, or refusal)—was not the result of superfluous words; the request for one or both of the specimens is part of the statutory warning form.

As the finding indicates, this portion of the interaction between appellant and the detective was not recorded. The trial court, having observed the demeanor and adjudged the credibility of the detective at the hearing, chose to believe his testimony that appellant freely agreed to the blood draw. We find no evidence in the record to the contrary. Accordingly, we defer to the trial court's finding that appellant's consent was voluntary. *See id.* We conclude the State met its burden to establish voluntary consent by clear and convincing evidence.

We overrule appellant's fourth and fifth issues.

## Modification of the Judgment

In a single cross-point, the State asks us to correct the judgment so that it correctly states (1) appellant pleaded true to an enhancement paragraph (and the trial court found that paragraph true), and (2) the trial court—rather than the jury—assessed appellant's punishment. We will modify a judgment to correct what the trial court could have corrected by a judgment nunc pro tunc, when the evidence necessary to correct the judgment appears in the record. *McGregor v. State*, 145 S.W.3d 820, 822 n.1 (Tex. App.—Dallas 2004, no pet.) (citing *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd)). The record supports the State's proposed modifications. Accordingly, we modify the trial court's judgment as follows:

- Following "Plea to 1st Enhancement Paragraph," we change "N/A" to "TRUE";
- Following "Findings on 1st Enhancement Paragraph," we change "N/A" to "TRUE"; and
- Under "Punishment Assessed by," we change "JURY" to "COURT."

As modified, we affirm the trial court's judgment.

Do Not Publish
TEX. R. APP. P. 47

120964F.U05

/David Lewis/
DAVID LEWIS
JUSTICE

–11–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

CHARLES RAY BACON, Appellant

No. 05-12-00964-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the 282nd Judicial District
Court, Dallas County, Texas
Trial Court Cause No. F11-31310-S.
Opinion delivered by Justice Lewis.
Justices Bridges and Fillmore participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

- Following "Plea to 1st Enhancement Paragraph," we change "N/A" to "TRUE";
- Following "Findings on 1st Enhancement Paragraph," we change "N/A" to "TRUE"; and
- Under "Punishment Assessed by," we change "JURY" to "COURT."

As **MODIFIED**, the judgment is **AFFIRMED**.

Judgment entered this 31st day of January, 2014.

/David Lewis/
DAVID LEWIS
JUSTICE

–12–