COURT OF APPEALS

                                      SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                                 NO.
2-08-398-CR

 

 

KELLY ONYECHE                                                                              APPELLANT

 

                                                             V.

 

THE STATE OF TEXAS                                                                             STATE

 

                                                       ------------

 

              FROM
THE 213TH DISTRICT COURT OF TARRANT COUNTY

 

                                                       ------------

 

                                      MEMORANDUM OPINION[1]

 

                                                       ------------

I. 
Introduction

Appellant Kelly
Onyeche appeals his conviction for aggravated robbery.  In four points, he argues that the evidence
is legally and factually insufficient and that the trial court abused its
discretion by overruling his rule 401 and rule 403 objections.  We will affirm.








II.  Factual and Procedural Background

In July 2007,
Alvin Carter, Kevin Anderson, Marcus Knox, and Appellant devised a plan to rob
Sid=s Food Store, a
small convenience store at the corner of McCart and South Park in Fort
Worth.  Appellant was to provide
transportation for the other three, who would enter and rob the store. 

Appellant lived in
his parents= house with his girlfriend, Tiara
Benson.  She had helped Appellant buy his
car, a light blue Pontiac Bonneville with a dark blue top.  On July 15, 2007, at around 2:00 p.m.,
Appellant and Tiara took the car to pick up Kevin and to drop off Tiara at the
house of Kevin=s Aunt Faye, passing Sid=s Food Store along
the way.  After dropping off Tiara,
Appellant and Kevin continued to Marcus=s house and picked
up Marcus and Alvin (also known as Adam), who were waiting in the street out
front.  Appellant then drove the car to
Sid=s Food Store. 








Justin Newby was
looking out his window on Amber Drive, a street running parallel to McCart
behind Sid=s Food Store, when he noticed a large,
light blue, 1980s model car parked in front of the house across the street.
Three young black men sat in the car for about three minutes before one in the
front passenger seat climbed out, spoke briefly with someone walking a dog in
the street, and then disappeared around the corner toward Sid=s Food Store. The
man in the back seat then moved up to the front and, while the driver was
talking on a cell phone, the car rolled down Amber Drive and turned
around.  As the car approached Justin=s house on the
return, it met the man who had climbed out minutes before, who was walking
rapidly and talking on his cell phone. 
He re-entered the car, and it turned onto South Park at the corner.
Justin thought perhaps the men were about to steal beer from the store so he
got a good look at the car.  

Appellant parked
the car on the street behind Sid=s Food Store.  Alvin, Marcus, and Kevin all got out and
walked toward the store. 

Around 2:15 p.m.,
Carolyn Hunter was heading westbound on South Park to a car wash when she saw
two young men Acreeping@ around the back
corner of Sid=s Food Store.  One of them was taller than the other, was
wearing purple latex gloves, and was carrying a partially concealed
handgun.  The shorter of the two was
dressed in black Afrom head to toe.@  The taller one kept looking into the store,
and both of them moved slowly as if to avoid being noticed. 

Ahmad Awde noticed
the men as well.  Ahmad, who was a seventeen-year-old
first-year college student and whose family owned Sid=s Food Store, was
working alone behind the counter. 
Sometime around 2:00 p.m., he saw men loitering around outside and at
one point opening the door and peeking inside. 








Between 2:15 and
2:30, Kelvin Henry and Sheila MurrayCvisiting from
GeorgiaCpulled up to the
front of Sid=s Food Store and went inside to buy
lottery tickets.  After making their
purchase, they returned to their car whereupon Kelvin realized that he had to
go to the restroom.  With the store
apparently empty, the shorter of the men who had been loitering outside of the
store went inside.  

Kelvin got out of
his car and walked back into to the store. 
On the way to the men=s room, he noticed
a young black man in the middle part of an aisle, about 5'7" tall, wearing
a black fishing hat and a black T-shirt and talking into a cell phone.  Kelvin stepped into the restroom. 

The man in the
fishing hat approached the counter as Ahmad stepped up to help him.  Without a word, the man pulled out a handgun,
slid back the slide, and shot Ahmad in the torso from a distance of less than
two feet.  

Kelvin had been in
the restroom for about five minutes and was getting ready to come out when he
heard a Apop@ and a Aboom@ followed by
screaming.  Sheila had been scratching
lottery tickets in the car out front when she heard a Afirecracker bang@ and then a Aboom.@  Appellant, who was waiting in the car behind
Sid=s Food Store, also
heard the gunshot.  He knew Alvin had
shot the gun because Appellant had seen Alvin with a gun earlier. 








The bullet
penetrated Ahmad=s right arm, entered through his ribcage,
damaged several internal organs, and caused his spinal cord to swell.  Ahmad=s legs went numb
and he fell against the inventory behind the counter, scattering it across the
floor.  

The man with the
purple gloves burst into the store, vaulted the counter, and grabbed the cash
register.  Both men fled. 

Sheila saw young
men running out of the store wearing bandanas. 
One with purple gloves was carrying a cash register.  They ran around the store and piled into
Appellant=s car. 

        Kelvin carefully peeked out of the men=s room door.  He walked out to see the store in
disarray.  The cash register was
gone.  Ahmad was laying on his back
behind the counter among scattered inventory in a widening pool of blood.  He was screaming, in extreme pain, and
bleeding profusely.  He yelled for Kelvin
to grab some towels and help him.  Kelvin
had no cell phone with him, but Ahmad had managed to call 911 himself before
Kelvin came to help.          Police and
paramedics arrived within minutes.  By
the time Carolyn Hunter had navigated the short drive to Hulen and Sycamore
School Road, where she stopped to tell officers about the men she had seen Acreeping@ around the store,
officers were already dispatched to the scene. 









Fifteen to twenty
minutes after Justin Newby first saw the suspicious blue car parked across the
street, one of his parents came home and told him that the police were at Sid=s Food Store.  Justin walked around the corner to report
what he had seen.  He described the blue
car, including a partial license plate number, to Officer David Hughes. 

Appellant drove to
Marcus=s house, and the
men proceeded to pry open the cash register and divide its contentsCapproximately $800Cbetween them.
Around 3:00 or 3:30 p.m., Appellant returned with Kevin to Aunt Faye=s house, where he
had left Tiara.  Tiara relayed that Aunt
Faye had called her en route to visiting her mother and had said that she had
seen a lot of police at Sid=s Food Store.  Appellant acted Aclueless like he
didn=t know what was
going on.@ Afterward, he was Ain and out@ all afternoon
until he came back to drive Tiara home around 7:30.  At some point in the afternoon, Tiara saw
Appellant with a wad of cash that he said he had won playing dice. 

Appellant was at
Marcus=s house with
Marcus, Alvin, Kevin, and Rodney Evans shooting dice around 7:45 or 8:00 that
night.  Playing with cash, Appellant
whispered to Rodney, A[W]e hit a lick,@ which Rodney
understood to mean that the men had robbed someone.  Sometime after the robbery, Rodney saw a pair
of purple gloves in the backseat of Appellant=s car and a cash
register at Marcus=s house. 








Fort Worth Robbery
Detective John Livesay was assigned the case. 
The day after the robbery, Ahmad=s brother Muhammad
gave Detective Livesay a possible license plate number for the getaway
car:  444 DMV.  That number was registered to a Toyota, but
it was similar to the partial number given by Justin: 44D or D44.  Detective Livesay broadcast the light blue
car=s description and
the partial license plate numbers. 

On July 17, two
days after the robbery, Officer Mark Hernandez spotted a sky blue Pontiac
Bonneville at McCart and West Cleburne with expired inspection and registration
stickers and the license plate number 444 DWM. Patrol units pulled it over at a
7-Eleven parking lot.  Tiara was driving,
and Appellant was in the passenger seat. 
When the car stopped, Appellant got out and tried to put some distance
between himself and the carCwalking toward the
rear of the storeCbefore an officer directed him to
stop.  Police photographed the car and
its occupants.  That night, Appellant
rented a room at Motel 6, paying cash for himself, Tiara, Marcus, Alvin and
Rodney. 

The police showed
Justin photos of the vehicle that they had stopped after the robbery, and
Justin was Aa hundred percent sure@ that they were of
the car he had seen the day of the robbery. 
He specifically remembered the unusual slant of the driver=s side
window.  








When Detective
Livesay discovered the connection between Appellant and the car seen around Sid=s Food Store at
the time of the robbery, he requested the department=s SWAT unit to follow
the car for a few days to identify others who may be involved and to intervene
in the event they attempted another robbery. 
Livesay compiled a photo spread, which he forwarded to a detective in
Georgia who then showed it to Kelvin Henry. 
Kelvin recognized Alvin in one of the photos as the man he had seen in
the fishing hat at Sid=s Food Store right before the shooting. 

On July 27,
Detective Livesay dropped by Appellant=s house and left
his card with Appellant=s mother. 
Appellant called the detective later that day, and after a few missed
appointments, he and Tiara visited the detective=s office on July
30.  Detective Livesay interviewed
Appellant and Tiara separately about the events of July 15.  Appellant=s and Tiara=s versions did not
match.  After Appellant was confronted with
discrepancies between his account and those of other witnesses, Appellant
dictated a confession, admitting that he had been the getaway driver in the Sid=s Food Store
robbery. 

Appellant was
tried as a party for the robbery at Sid=s Food Store.  The jury returned a verdict of guilty and
assessed punishment at fourteen years= confinement.  

 








III.  Sufficiency of the Evidence

In his first and
second points, Appellant challenges the legal and factual sufficiency of the
evidence to support his conviction, arguing in both points, AThe State of Texas
did not meet its burden of proof, proof beyond a reasonable doubt, in that it
failed to prove that Appellant committed the offense as is set out in the
indictment.@

The indictment
alleged that Appellant committed aggravated robbery by intentionally or
knowingly, while in the course of committing theft of property, and with intent
to obtain or maintain control of the property, causing bodily injury to Ahmad
by shooting him with a firearm, a deadly weapon.  The court=s charge authorized
the jury to convict if the evidence showed beyond a reasonable doubt that
Appellant acted as a party.

Appellant did not
dispute that there had been an aggravated robbery at Sid=s Food Store
during which Ahmad had been injured by a gunshot; his theory at trial was that
he had not been involved.  In closing
argument, counsel for Appellant argued:

Nothing
in this case puts [Appellant] in that store, around that store, receiving
proceeds of any of this robbery, having any sort of intent or plan to aid
whoever did this.  He is just not
guilty.  He is not guilty as the
principle [sic] actor.  He is not guilty
as a party.  

 

 








A.  Standards of
Review

1.  Legal Sufficiency
Standard of Review

In reviewing the
legal sufficiency of the evidence to support a conviction, we view all of the
evidence in the light most favorable to the prosecution in order to determine
whether any rational trier of fact could have found the essential elements of
the crime beyond a reasonable doubt.  Jackson
v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Clayton v.
State, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).








This standard
gives full play to the responsibility of the trier of fact to resolve conflicts
in the testimony, to weigh the evidence, and to draw reasonable inferences from
basic facts to ultimate facts.  Jackson,
443 U.S. at 319, 99 S. Ct. at 2789; Clayton, 235 S.W.3d at 778.  The trier of fact is the sole judge of the
weight and credibility of the evidence.  See Tex. Code Crim. Proc. Ann. art. 38.04
(Vernon 1979); Brown v. State, 270 S.W.3d 564, 568 (Tex. Crim. App.
2008), cert. denied, 129 S. Ct. 2075 (2009).  Thus, when performing a legal sufficiency
review, we may not re-evaluate the weight and credibility of the evidence and
substitute our judgment for that of the factfinder.  Dewberry v. State, 4 S.W.3d 735, 740
(Tex. Crim. App. 1999), cert. denied, 529 U.S. 1131 (2000).  Instead, we Adetermine whether
the necessary inferences are reasonable based upon the combined and cumulative
force of all the evidence when viewed in the light most favorable to the
verdict.@  Hooper v. State, 214 S.W.3d 9, 16B17 (Tex. Crim.
App. 2007).  We must presume that the
factfinder resolved any conflicting inferences in favor of the prosecution and
defer to that resolution.  Jackson,
443 U.S. at 326, 99 S. Ct. at 2793; Clayton, 235 S.W.3d at 778.

2.  Factual Sufficiency Standard of Review

When reviewing the
factual sufficiency of the evidence to support a conviction, we view all the
evidence in a neutral light, favoring neither party.  Steadman v. State, 280 S.W.3d 242, 246
(Tex. Crim. App. 2009); Watson v. State, 204 S.W.3d 404, 414 (Tex. Crim.
App. 2006).  We then ask whether the
evidence supporting the conviction, although legally sufficient, is
nevertheless so weak that the factfinder=s determination is
clearly wrong and manifestly unjust or whether conflicting evidence so greatly
outweighs the evidence supporting the conviction that the factfinder=s determination is
manifestly unjust.  Steadman, 280
S.W.3d at 246; Watson, 204 S.W.3d at 414B15, 417.  To reverse under the second ground, we must
determine, with some objective basis in the record, that the great weight and
preponderance of all the evidence, although legally sufficient, contradicts the
verdict.  Watson, 204 S.W.3d at
417.  








Unless we conclude
that it is necessary to correct manifest injustice, we must give due deference
to the factfinder=s determinations, Aparticularly those
determinations concerning the weight and credibility of the evidence.@  Johnson v. State, 23 S.W.3d 1, 9 (Tex.
Crim. App. 2000); see Steadman, 280 S.W.3d at 246.  Evidence is always factually sufficient when
it preponderates in favor of the conviction. 
Steadman, 280 S.W.3d at 247; see Watson, 204 S.W.3d at
417.  








In determining
whether the evidence is factually insufficient to support a conviction that is
nevertheless supported by legally sufficient evidence, it is not enough that
this court Aharbor a subjective level of reasonable
doubt to overturn [the] conviction.@  Watson, 204 S.W.3d at 417.   We cannot conclude that a conviction is
clearly wrong or manifestly unjust simply because we would have decided
differently than the jury or because we disagree with the jury=s resolution of a
conflict in the evidence.  Id.  We may not simply substitute our judgment for
the factfinder=s.  Johnson,
23 S.W.3d at 12; Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App.
1997).  Unless the record clearly reveals
that a different result is appropriate, we must defer to the jury=s determination of
the weight to be given contradictory testimonial evidence because resolution of
the conflict Aoften turns on an evaluation of
credibility and demeanor, and those jurors were in attendance when the
testimony was delivered.@  Johnson,
23 S.W.3d at 8.  Our deference in this
regard safeguards the defendant=s right to a trial
by jury.  Lancon v. State, 253
S.W.3d 699, 704 (Tex. Crim. App. 2008).           

An opinion
addressing factual sufficiency must include a discussion of the most important
and relevant evidence that supports the appellant=s complaint on
appeal.  Sims v. State, 99 S.W.3d
600, 603 (Tex. Crim. App. 2003).  

B.  Law of Parties








Under the law of
parties, A[a] person is criminally responsible as a
party to an offense if the offense is committed by his own conduct, by the
conduct of another for which he is criminally responsible, or by both.@  Tex. Penal Code Ann. ' 7.01(a) (Vernon
2003); Frank v. State, 183 S.W.3d 63, 72 (Tex. App.CFort Worth 2005,
pet. ref=d).  A person is Acriminally
responsible@ for an offense committed by the conduct
of another if, acting with intent to promote or assist the commission of the
offense, he solicits, encourages, directs, aids, or attempts to aid the other
person to commit the offense.  Tex. Penal
Code Ann. ' 7.02(a)(2) (Vernon 2003); Frank,
183 S.W.3d at 72.  In determining whether
a defendant participated in an offense as a party, the factfinder may examine
the events occurring before, during, and after the commission of the offense
and may rely on actions of the defendant that show an understanding and common
design to commit the offense.  Ransom
v. State, 920 S.W.2d 288, 302 (Tex. Crim. App. 1994) (op. on reh=g).

C.  Legally Sufficient Evidence 

The evidence
presented in this case showed that Appellant was a party to the Sid=s Food Store
robbery by acting as the getaway driver. 
Appellant admitted to police that he and his three friends, Kevin,
Alvin, and Marcus, had discussed robbing Sid's Food Store and that, a few days
later, he drove them in his blue Bonneville to the store and waited as his
friends went inside to rob the store. 
Several eyewitnesses observed his blue Bonneville in the street behind
the store with its occupants acting suspiciously shortly before the robbery
took place.  Appellant also admitted to
police that he knew Alvin had a gun with him during the robbery and explained
that, when he heard the gunshot, he knew who had done the shooting.  Compare Wooden v. State, 101 S.W.3d
542, 546 (Tex. App.CFort Worth 2003, pet. ref=d) (holding that
evidence was insufficient to prove one who facilitated getaway was liable as
party to aggravated robbery because there was no evidence that he knew a gun
was used or exhibited in the robbery). 
After the robbery, Appellant was seen with a wad of cash, and he
explained the money to his friend by whispering that he and his friends had Ahit a lick.@  








Viewing the
evidence in the light most favorable to the jury=s verdict, we  hold that a rational trier of fact could have
found that the evidence at trial was sufficient to establish that Appellant
committed aggravated robbery.  See
Jackson, 443 U.S. at 326, 99 S. Ct. at 2793; Clayton, 235 S.W.3d at
778. We overrule Appellant=s first point.

D.  Factually
Sufficient Evidence

 A neutral review of the evidence also reveals
that the jury could reasonably find that Appellant committed aggravated robbery
by acting as the getaway driver.  See
Steadman, 280 S.W.3d at 246; Watson, 204 S.W.3d at 414.   In addition to Appellant's confession to
police, in which he described how he drove to the store, parked behind it, knew
Alvin carried a gun, watched as Alvin, Kevin, and Marcus got out and covered
their faces with bandanas, waited for them to return, heard the gunshot, and
drove them to Marcus=s house after the robbery, the evidence at
trial also demonstrated that Appellant had explained to his friend that he had
robbed the store and includes several eyewitnesses= accounts of the
robbery.  These accounts are consistent
with Appellant=s confession.  








Viewing the
evidence in a neutral light, we find no objective basis for holding that the
jury=s verdict was
clearly wrong or manifestly unjust or that it is contradicted by the great
weight and preponderance of the evidence. 
See Lancon, 253 S.W.3d at 704; Watson, 204 S.W.3d at 414B15, 417.  Rather, the evidence presented at trial was
sufficient to support the jury=s verdict, and no
contrary evidence exists that would render the evidence factually insufficient
under the applicable standard of review. 
See Lancon, 253 S.W.3d at 704; Watson, 204 S.W.3d at 414B15, 417.  Accordingly, we hold that the evidence is
factually sufficient to support Appellant=s conviction for
aggravated robbery.  We overrule
Appellant=s second point. 

V. 
Extraneous Acts Evidence at Punishment

In his third
point, Appellant contends that the trial court abused its discretion during the
punishment phase of trial by admitting evidence that Appellant displayed a
firearm at Sid=s Food Store some months before the
robbery.  Specifically, Appellant asserts
that he did not receive reasonable notice of the State=s intent to offer
this evidence as required by article 37.07, section 3(g) of the code of
criminal procedure and that the trial court erred by not conducting a balancing
test under rule of evidence 403. 








The record shows
that on February 2, 2008, Appellant requested notice of the State=s intent to offer
extraneous offenses under rule of evidence 404(b) and code of criminal
procedure article 37.07, section 3(g). 
On October 9, 2008, the State provided notice to Appellant that it
intended to offer evidence that Appellant had displayed a handgun to Muhammed
Awde at Sid=s Food Store.  Specifically, the notice states:

That on or about February 1, 2007, the
defendant possessed and displayed a firearm, toBwit: a handgun to
Mohammad Awde at 6809 McCart Avenue, Tarrant County, Texas, a location which
sells alcoholic beverages.

During the
punishment phase, the prosecutor asked Muhammed Awde if he recalled whether
something out of the ordinary had occurred sometime before his brother Ahmad
was robbed and shot.  Muhammed testified
that three to six months before the robbery, Appellant had come into the store
with some of his friends.  Appellant objected
that Muhammed=s inability to remember the precise date
of the event rendered the State=s notice regarding
the incident untimely and that the evidence was inadmissible under rule
403.  The trial court overruled the
objections. 








Muhammed then
testified that the men had come into the store and, after paying for their
purchases, one of Appellant=s friends had
joked with Muhammed that he should jump over the counter, beat up Muhammed, and
take the money from the register.  As
Appellant followed his friends out the door, Muhammed advised him that he
should tell his friend that he should not joke around like that because someone
might feel threatened and take action against him.  Appellant responded by opening his jacket,
pulling out a small black revolver, and saying, AOh, don=t worry.  We=re prepared.  I have a gun.@ 

A.  Notice was
Reasonable Under Article 37.07, Section 3(g)








Article 37.07,
section 3(a) of the code of criminal procedure provides for the introduction of
evidence relevant to sentencing, including the circumstances of the offense and
evidence of extraneous bad acts, during the punishment phase of a trial.  Tex. Code Crim. Proc. Ann. art. 37.07, ' 3(a) (Vernon
2006).  Upon request, the State must
provide the defendant reasonable notice of its intent to offer  evidence of extraneous bad acts.  Id. art 37.07, ' 3(g).  Notice of intent to offer evidence of
extraneous acts that did not result in a final conviction in a court of record
or a probated or suspended sentence is reasonable only if it includes the date
on which, the county in which, and the victim to which the extraneous act
occurred.  Id.  We have held that a variation of six weeks
between the date of the offense given in the notice and that presented in
testimony is reasonable.  See Burling
v. State, 83 S.W.3d 199, 203 (Tex. App.CFort Worth 2002,
pet. ref=d). Other courts
have found periods ranging from three to eighteen months reasonable. See
Hohn v. State, 951 S.W.2d 535, 537 (Tex. App.CBeaumont 1997, no
pet.) (holding that three-and-a-half-months= notice
substantially complied with statute); Splawn v. State, 949 S.W.2d 867,
870B71 (Tex. App.CDallas  1997, no pet.) (holding that eighteen months
was reasonable.)

Here, Muhammed
testified that Appellant had displayed a gun to him at Sid=s Food Store Ano more than three
to six months before@ the robbery, which occurred on July 17,
2007.  The State=s notice alleged
that Appellant had displayed a gun to Muhammed Aon or about
February 1, 2007.@  Thus,
the State=s notice falls within the
three-to-six-month range to which Muhammed testified at trial.

The purpose of
article 37.07, section 3(g) is to avoid unfair surprise, that is, trial by
ambush.  Nance v. State, 946
S.W.2d 490, 493 (Tex. App.CFort Worth 1997,
pet. ref=d).  Appellant does not claim surprise or provide
any insight as to how he was surprised by Muhammed=s testimony.  Nor does the record show that Appellant was
ambushed.  Appellant did not request a
continuance to allow him to prepare for Muhammed=s cross
examination, and in fact, Appellant conducted a thorough
cross-examination.  We hold that the
State=s notice in this
case substantially complied with the date requirement of article 37.07, section
3(g).  See Burling, 83 S.W.3d at
203; Hohn, 951 S.W.2d at 537; Splawn, 949 S.W.2d at 871.








Appellant also
claims the State=s notice failed to specify a location for
the extraneous offense.  The State=s notice, however,
clearly states that Appellant had displayed a handgun to Muhammed Aat 6809 McCart
Avenue, Tarrant County, Texas.@  This portion of Appellant=s complaint,
therefore, is incorrect.

B.  Rule 403
Balancing Test

Appellant also
contends that the trial court abused its discretion by failing to conduct a
rule 403 balancing test.  

A trial court=s ruling admitting
extraneous offense evidence is reviewed for an abuse of discretion.  See Mitchell v. State, 931 S.W.2d 950,
953 (Tex. Crim. App. 1996).  The question
for the jury when deciding punishment is what sentence it should assess.  Ellison v. State, 201 S.W.3d 714, 718
(Tex. Crim. App. 2006); Haley v. State, 173 S.W.3d 510, 515 (Tex. Crim.
App. 2005). Generally, the jury is entitled to have before it all possibly
relevant information about the individual defendant whose fate it must
determine.  Cooks v. State, 844
S.W.2d 697, 735 (Tex. Crim. App. 1992), cert. denied, 509 U.S. 927
(1993).  

 Admissibility of punishment-phase evidence
that the trial court deems relevant is still subject to a rule 403
analysis.  See Rogers v. State,
991 S.W.2d 263, 266B67 (Tex. Crim. App. 1999).  Under Texas Rule of Evidence 403, even
relevant evidence may be excluded if its probative value is substantially
outweighed by the danger of unfair prejudice. 
See Tex. R. Evid. 403; Reese v. State, 33 S.W.3d 238, 240B41 (Tex. Crim.
App. 2000).  








A trial court is
not required to perform a rule 403 balancing test in a formal hearing on the
record or even announce that it has conducted the test; once the rule is
invoked, the trial court is presumed to have performed the test. Williams v.
State, 958 S.W.2d 186, 195B96 (Tex. Crim.
App. 1997).  

In this case,
Appellant=s sole rule 403 complaint on appeal is
that the trial court Adid not conduct a balancing test as is
required by [r]ule 403.@ 
But a silent record does not show that the trial court did not perform
the required balancing test, and we presume that it did so before ruling on
Appellant=s objection.  See Rojas v. State, 986 S.W.2d 241,
250 (Tex. Crim. App. 1998); Williams, 958 S.W.2d at 195B96; Moyer v.
State, 948 S.W.2d 525, 531 (Tex. App.CFort Worth 1997,
pet. ref=d).  The trial court could have properly decided
that the probative value of Muhammed=s testimony was
not substantially outweighed by the danger of unfair prejudice.  See Tex. R. Evid. 403; Reese,
33 S.W.3d at 240B41. 
We overrule Appellant=s third point. 

VI.  Relevance of Victim=s Present
Condition

In his fourth
point, Appellant contends that the trial court abused its discretion by
overruling his rule 401 objection to Ahmad=s demonstration
before the jury of the degree of movement he had in his legs.  








Evidence is
relevant if it has any tendency to make the existence of a fact that is of
consequence to the determination of the action more probable or less probable
than it would be without the evidence. 
Tex. R. Evid. 401.  The threshold
for relevance is low.  Ex parte Moreno,
245 S.W.3d 419, 425 n.20 (Tex. Crim. App. 2008) (citing Tennard v. Dretke,
542 U.S. 274, 285, 124 S. Ct. 2562, 2570 (2004)). 

Appellant was
charged with aggravated robbery.  One of
the elements of the State=s proof was that Ahmad sustained bodily
injury.  Evidence that Ahmad had
difficulty using his legs after the shooting made it more probable that he had
suffered bodily injury.  








Appellant argues,
though, that the evidence was not relevant because the State had already proven
the nature of Ahmed=s injuries.  But relevancy is absolute:  it is either present or it is not.  See Rachal v. State, 917 S.W.2d 799,
816 (Tex. Crim. App. 1996); 1 Steven Goode, et. al., Texas Practice: Guide
to the Texas Rules of Evidence ' 401.3 (3d ed. 2002).  Thus, whether similar evidence was admitted
to prove the same facts does not factor into a relevancy determination under
rule 401.  See Woods v. State, 14
S.W.3d 445, 453 (Tex. App.CFort Worth 2000,
no pet.); see also Gigliobianco v. State, 210 S.W.3d 637, 641B42 (Tex. Crim.
App. 2006) (considering likelihood that evidence will Amerely repeat
evidence already admitted@ in a rule 403 balancing test).   Accordingly, we hold that the trial court
acted within its wide discretion by admitting evidence of the degree to which
Ahmad could move his legs.  See
Carrasco v. State, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005); Montgomery,
810 S.W.2d at 390.  We overrule Appellant=s fourth point.          

VII.  Conclusion

Having overruled
Appellant=s four points, we affirm the trial court=s judgment.

 

SUE WALKER

JUSTICE

 

PANEL:
LIVINGSTON, C.J.; WALKER and MEIER, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:
May 13, 2010

 

 

 

 











[1]See Tex. R. App. P. 47.4.