

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

NO. 2-08-398-CR

KELLY ONYECHE                                                    APPELLANT

V.

THE STATE OF TEXAS                                                   STATE

------------

FROM THE 213TH DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. INTRODUCTION

Appellant Kelly Onyeche appeals his conviction for aggravated robbery. In four points, he argues that the evidence is legally and factually insufficient and that the trial court abused its discretion by overruling his rule 401 and rule 403 objections. We will affirm.

---

[1] See Tex. R. App. P. 47.4.

## II. FACTUAL AND PROCEDURAL BACKGROUND

In July 2007, Alvin Carter, Kevin Anderson, Marcus Knox, and Appellant devised a plan to rob Sid's Food Store, a small convenience store at the corner of McCart and South Park in Fort Worth. Appellant was to provide transportation for the other three, who would enter and rob the store.

Appellant lived in his parents' house with his girlfriend, Tiara Benson. She had helped Appellant buy his car, a light blue Pontiac Bonneville with a dark blue top. On July 15, 2007, at around 2:00 p.m., Appellant and Tiara took the car to pick up Kevin and to drop off Tiara at the house of Kevin's Aunt Faye, passing Sid's Food Store along the way. After dropping off Tiara, Appellant and Kevin continued to Marcus's house and picked up Marcus and Alvin (also known as Adam), who were waiting in the street out front. Appellant then drove the car to Sid's Food Store.

Justin Newby was looking out his window on Amber Drive, a street running parallel to McCart behind Sid's Food Store, when he noticed a large, light blue, 1980s model car parked in front of the house across the street. Three young black men sat in the car for about three minutes before one in the front passenger seat climbed out, spoke briefly with someone walking a dog in the street, and then disappeared around the corner toward Sid's Food Store. The man in the back seat then moved up to the front and, while the driver was

2

talking on a cell phone, the car rolled down Amber Drive and turned around. As the car approached Justin's house on the return, it met the man who had climbed out minutes before, who was walking rapidly and talking on his cell phone. He re-entered the car, and it turned onto South Park at the corner. Justin thought perhaps the men were about to steal beer from the store so he got a good look at the car.

Appellant parked the car on the street behind Sid's Food Store. Alvin, Marcus, and Kevin all got out and walked toward the store.

Around 2:15 p.m., Carolyn Hunter was heading westbound on South Park to a car wash when she saw two young men "creeping" around the back corner of Sid's Food Store. One of them was taller than the other, was wearing purple latex gloves, and was carrying a partially concealed handgun. The shorter of the two was dressed in black "from head to toe." The taller one kept looking into the store, and both of them moved slowly as if to avoid being noticed.

Ahmad Awde noticed the men as well. Ahmad, who was a seventeen-year-old first-year college student and whose family owned Sid's Food Store, was working alone behind the counter. Sometime around 2:00 p.m., he saw men loitering around outside and at one point opening the door and peeking inside.

3

Between 2:15 and 2:30, Kelvin Henry and Sheila Murray—visiting from Georgia—pulled up to the front of Sid's Food Store and went inside to buy lottery tickets. After making their purchase, they returned to their car whereupon Kelvin realized that he had to go to the restroom. With the store apparently empty, the shorter of the men who had been loitering outside of the store went inside.

Kelvin got out of his car and walked back into to the store. On the way to the men's room, he noticed a young black man in the middle part of an aisle, about 5'7" tall, wearing a black fishing hat and a black T-shirt and talking into a cell phone. Kelvin stepped into the restroom.

The man in the fishing hat approached the counter as Ahmad stepped up to help him. Without a word, the man pulled out a handgun, slid back the slide, and shot Ahmad in the torso from a distance of less than two feet.

Kelvin had been in the restroom for about five minutes and was getting ready to come out when he heard a "pop" and a "boom" followed by screaming. Sheila had been scratching lottery tickets in the car out front when she heard a "firecracker bang" and then a "boom." Appellant, who was waiting in the car behind Sid's Food Store, also heard the gunshot. He knew Alvin had shot the gun because Appellant had seen Alvin with a gun earlier.

4

The bullet penetrated Ahmad's right arm, entered through his ribcage, damaged several internal organs, and caused his spinal cord to swell. Ahmad's legs went numb and he fell against the inventory behind the counter, scattering it across the floor.

The man with the purple gloves burst into the store, vaulted the counter, and grabbed the cash register. Both men fled.

Sheila saw young men running out of the store wearing bandanas. One with purple gloves was carrying a cash register. They ran around the store and piled into Appellant's car.

Kelvin carefully peeked out of the men's room door. He walked out to see the store in disarray. The cash register was gone. Ahmad was laying on his back behind the counter among scattered inventory in a widening pool of blood. He was screaming, in extreme pain, and bleeding profusely. He yelled for Kelvin to grab some towels and help him. Kelvin had no cell phone with him, but Ahmad had managed to call 911 himself before Kelvin came to help.

Police and paramedics arrived within minutes. By the time Carolyn Hunter had navigated the short drive to Hulen and Sycamore School Road, where she stopped to tell officers about the men she had seen "creeping" around the store, officers were already dispatched to the scene.

Fifteen to twenty minutes after Justin Newby first saw the suspicious blue car parked across the street, one of his parents came home and told him that the police were at Sid's Food Store. Justin walked around the corner to report what he had seen. He described the blue car, including a partial license plate number, to Officer David Hughes.

Appellant drove to Marcus's house, and the men proceeded to pry open the cash register and divide its contents—approximately $800—between them. Around 3:00 or 3:30 p.m., Appellant returned with Kevin to Aunt Faye's house, where he had left Tiara. Tiara relayed that Aunt Faye had called her en route to visiting her mother and had said that she had seen a lot of police at Sid's Food Store. Appellant acted "clueless like he didn't know what was going on." Afterward, he was "in and out" all afternoon until he came back to drive Tiara home around 7:30. At some point in the afternoon, Tiara saw Appellant with a wad of cash that he said he had won playing dice.

Appellant was at Marcus's house with Marcus, Alvin, Kevin, and Rodney Evans shooting dice around 7:45 or 8:00 that night. Playing with cash, Appellant whispered to Rodney, "[W]e hit a lick," which Rodney understood to mean that the men had robbed someone. Sometime after the robbery, Rodney saw a pair of purple gloves in the backseat of Appellant's car and a cash register at Marcus's house.

6

Fort Worth Robbery Detective John Livesay was assigned the case. The day after the robbery, Ahmad's brother Muhammad gave Detective Livesay a possible license plate number for the getaway car: 444 DMV. That number was registered to a Toyota, but it was similar to the partial number given by Justin: 44D or D44. Detective Livesay broadcast the light blue car's description and the partial license plate numbers.

On July 17, two days after the robbery, Officer Mark Hernandez spotted a sky blue Pontiac Bonneville at McCart and West Cleburne with expired inspection and registration stickers and the license plate number 444 DWM. Patrol units pulled it over at a 7-Eleven parking lot. Tiara was driving, and Appellant was in the passenger seat. When the car stopped, Appellant got out and tried to put some distance between himself and the car—walking toward the rear of the store—before an officer directed him to stop. Police photographed the car and its occupants. That night, Appellant rented a room at Motel 6, paying cash for himself, Tiara, Marcus, Alvin and Rodney.

The police showed Justin photos of the vehicle that they had stopped after the robbery, and Justin was "a hundred percent sure" that they were of the car he had seen the day of the robbery. He specifically remembered the unusual slant of the driver's side window.

When Detective Livesay discovered the connection between Appellant and the car seen around Sid's Food Store at the time of the robbery, he requested the department's SWAT unit to follow the car for a few days to identify others who may be involved and to intervene in the event they attempted another robbery. Livesay compiled a photo spread, which he forwarded to a detective in Georgia who then showed it to Kelvin Henry. Kelvin recognized Alvin in one of the photos as the man he had seen in the fishing hat at Sid's Food Store right before the shooting.

On July 27, Detective Livesay dropped by Appellant's house and left his card with Appellant's mother. Appellant called the detective later that day, and after a few missed appointments, he and Tiara visited the detective's office on July 30. Detective Livesay interviewed Appellant and Tiara separately about the events of July 15. Appellant's and Tiara's versions did not match. After Appellant was confronted with discrepancies between his account and those of other witnesses, Appellant dictated a confession, admitting that he had been the getaway driver in the Sid's Food Store robbery.

Appellant was tried as a party for the robbery at Sid's Food Store. The jury returned a verdict of guilty and assessed punishment at fourteen years' confinement.

## III. SUFFICIENCY OF THE EVIDENCE

In his first and second points, Appellant challenges the legal and factual sufficiency of the evidence to support his conviction, arguing in both points, "The State of Texas did not meet its burden of proof, proof beyond a reasonable doubt, in that it failed to prove that Appellant committed the offense as is set out in the indictment."

The indictment alleged that Appellant committed aggravated robbery by intentionally or knowingly, while in the course of committing theft of property, and with intent to obtain or maintain control of the property, causing bodily injury to Ahmad by shooting him with a firearm, a deadly weapon. The court's charge authorized the jury to convict if the evidence showed beyond a reasonable doubt that Appellant acted as a party.

Appellant did not dispute that there had been an aggravated robbery at Sid's Food Store during which Ahmad had been injured by a gunshot; his theory at trial was that he had not been involved. In closing argument, counsel for Appellant argued:

> Nothing in this case puts [Appellant] in that store, around that store, receiving proceeds of any of this robbery, having any sort of intent or plan to aid whoever did this. He is just not guilty. He is not guilty as the principle [sic] actor. He is not guilty as a party.

A. Standards of Review

### 1. *Legal Sufficiency Standard of Review*

In reviewing the legal sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the prosecution in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778. The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); *Brown v. State*, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008), *cert. denied*, 129 S. Ct. 2075 (2009). Thus, when performing a legal sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), *cert. denied*, 529 U.S. 1131 (2000). Instead, we "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all

the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007). We must presume that the factfinder resolved any conflicting inferences in favor of the prosecution and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Clayton*, 235 S.W.3d at 778.

### 2. Factual Sufficiency Standard of Review

When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party. *Steadman v. State*, 280 S.W.3d 242, 246 (Tex. Crim. App. 2009); *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006). We then ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the factfinder's determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the factfinder's determination is manifestly unjust. *Steadman*, 280 S.W.3d at 246; *Watson*, 204 S.W.3d at 414–15, 417. To reverse under the second ground, we must determine, with some objective basis in the record, that the great weight and preponderance of all the evidence, although legally sufficient, contradicts the verdict. *Watson*, 204 S.W.3d at 417.

Unless we conclude that it is necessary to correct manifest injustice, we must give due deference to the factfinder's determinations, "particularly those determinations concerning the weight and credibility of the evidence." *Johnson v. State*, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000); *see Steadman*, 280 S.W.3d at 246. Evidence is always factually sufficient when it preponderates in favor of the conviction. *Steadman*, 280 S.W.3d at 247; *see Watson*, 204 S.W.3d at 417.

In determining whether the evidence is factually insufficient to support a conviction that is nevertheless supported by legally sufficient evidence, it is not enough that this court "harbor a subjective level of reasonable doubt to overturn [the] conviction." *Watson*, 204 S.W.3d at 417. We cannot conclude that a conviction is clearly wrong or manifestly unjust simply because we would have decided differently than the jury or because we disagree with the jury's resolution of a conflict in the evidence. *Id.* We may not simply substitute our judgment for the factfinder's. *Johnson*, 23 S.W.3d at 12; *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). Unless the record clearly reveals that a different result is appropriate, we must defer to the jury's determination of the weight to be given contradictory testimonial evidence because resolution of the conflict "often turns on an evaluation of credibility and demeanor, and those jurors were in attendance when the testimony was delivered." *Johnson*,

12

23 S.W.3d at 8. Our deference in this regard safeguards the defendant's right to a trial by jury. *Lancon v. State*, 253 S.W.3d 699, 704 (Tex. Crim. App. 2008).

An opinion addressing factual sufficiency must include a discussion of the most important and relevant evidence that supports the appellant's complaint on appeal. *Sims v. State*, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

### B. Law of Parties

Under the law of parties, "[a] person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both." Tex. Penal Code Ann. § 7.01(a) (Vernon 2003); *Frank v. State*, 183 S.W.3d 63, 72 (Tex. App.—Fort Worth 2005, pet. ref'd). A person is "criminally responsible" for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. Tex. Penal Code Ann. § 7.02(a)(2) (Vernon 2003); *Frank*, 183 S.W.3d at 72. In determining whether a defendant participated in an offense as a party, the factfinder may examine the events occurring before, during, and after the commission of the offense and may rely on actions of the defendant that show an understanding

13

and common design to commit the offense.  *Ransom v. State*, 920 S.W.2d 288, 302 (Tex. Crim. App. 1994) (op. on reh'g).

## C.  Legally Sufficient Evidence

The evidence presented in this case showed that Appellant was a party to the Sid's Food Store robbery by acting as the getaway driver.  Appellant admitted to police that he and his three friends, Kevin, Alvin, and Marcus, had discussed robbing Sid's Food Store and that, a few days later, he drove them in his blue Bonneville to the store and waited as his friends went inside to rob the store.  Several eyewitnesses observed his blue Bonneville in the street behind the store with its occupants acting suspiciously shortly before the robbery took place.  Appellant also admitted to police that he knew Alvin had a gun with him during the robbery and explained that, when he heard the gunshot, he knew who had done the shooting. *Compare Wooden v. State*, 101 S.W.3d 542, 546 (Tex. App.—Fort Worth 2003, pet. ref'd) (holding that evidence was insufficient to prove one who facilitated getaway was liable as party to aggravated robbery because there was no evidence that he knew a gun was used or exhibited in the robbery).  After the robbery, Appellant was seen with a wad of cash, and he explained the money to his friend by whispering that he and his friends had "hit a lick."

14

Viewing the evidence in the light most favorable to the jury's verdict, we hold that a rational trier of fact could have found that the evidence at trial was sufficient to establish that Appellant committed aggravated robbery. *See Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Clayton*, 235 S.W.3d at 778. We overrule Appellant's first point.

### D. Factually Sufficient Evidence

A neutral review of the evidence also reveals that the jury could reasonably find that Appellant committed aggravated robbery by acting as the getaway driver. *See Steadman*, 280 S.W.3d at 246; *Watson*, 204 S.W.3d at 414. In addition to Appellant's confession to police, in which he described how he drove to the store, parked behind it, knew Alvin carried a gun, watched as Alvin, Kevin, and Marcus got out and covered their faces with bandanas, waited for them to return, heard the gunshot, and drove them to Marcus's house after the robbery, the evidence at trial also demonstrated that Appellant had explained to his friend that he had robbed the store and includes several eyewitnesses' accounts of the robbery. These accounts are consistent with Appellant's confession.

Viewing the evidence in a neutral light, we find no objective basis for holding that the jury's verdict was clearly wrong or manifestly unjust or that it is contradicted by the great weight and preponderance of the evidence. *See*

15

*Lancon*, 253 S.W.3d at 704; *Watson*, 204 S.W.3d at 414–15, 417. Rather, the evidence presented at trial was sufficient to support the jury's verdict, and no contrary evidence exists that would render the evidence factually insufficient under the applicable standard of review. *See Lancon*, 253 S.W.3d at 704; *Watson*, 204 S.W.3d at 414–15, 417. Accordingly, we hold that the evidence is factually sufficient to support Appellant's conviction for aggravated robbery. We overrule Appellant's second point.

## V. EXTRANEOUS ACTS EVIDENCE AT PUNISHMENT

In his third point, Appellant contends that the trial court abused its discretion during the punishment phase of trial by admitting evidence that Appellant displayed a firearm at Sid's Food Store some months before the robbery. Specifically, Appellant asserts that he did not receive reasonable notice of the State's intent to offer this evidence as required by article 37.07, section 3(g) of the code of criminal procedure and that the trial court erred by not conducting a balancing test under rule of evidence 403.

The record shows that on February 2, 2008, Appellant requested notice of the State's intent to offer extraneous offenses under rule of evidence 404(b) and code of criminal procedure article 37.07, section 3(g). On October 9, 2008, the State provided notice to Appellant that it intended to offer evidence

16

that Appellant had displayed a handgun to Muhammed Awde at Sid's Food Store. Specifically, the notice states:

> That on or about February 1, 2007, the defendant possessed and displayed a firearm, to−wit: a handgun to Mohammad Awde at 6809 McCart Avenue, Tarrant County, Texas, a location which sells alcoholic beverages.

During the punishment phase, the prosecutor asked Muhammed Awde if he recalled whether something out of the ordinary had occurred sometime before his brother Ahmad was robbed and shot. Muhammed testified that three to six months before the robbery, Appellant had come into the store with some of his friends. Appellant objected that Muhammed's inability to remember the precise date of the event rendered the State's notice regarding the incident untimely and that the evidence was inadmissible under rule 403. The trial court overruled the objections.

Muhammed then testified that the men had come into the store and, after paying for their purchases, one of Appellant's friends had joked with Muhammed that he should jump over the counter, beat up Muhammed, and take the money from the register. As Appellant followed his friends out the door, Muhammed advised him that he should tell his friend that he should not joke around like that because someone might feel threatened and take action

17

against him.  Appellant responded by opening his jacket, pulling out a small black revolver, and saying, "Oh, don't worry.  We're prepared.  I have a gun."

A.  Notice was Reasonable Under Article 37.07, Section 3(g)

Article 37.07, section 3(a) of the code of criminal procedure provides for the introduction of evidence relevant to sentencing, including the circumstances of the offense and evidence of extraneous bad acts, during the punishment phase of a trial.  Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a) (Vernon 2006). Upon request, the State must provide the defendant reasonable notice of its intent to offer  evidence of extraneous bad acts.  *Id.* art 37.07, § 3(g).  Notice of intent to offer evidence of extraneous acts that did not result in a final conviction in a court of record or a probated or suspended sentence is reasonable only if it includes the date on which, the county in which, and the victim to which the extraneous act occurred.  *Id.*  We have held that a variation of six weeks between the date of the offense given in the notice and that presented in testimony is reasonable.  *See Burling v. State*, 83 S.W.3d 199, 203 (Tex. App.—Fort Worth 2002, pet. ref'd). Other courts have found periods ranging from three to eighteen months reasonable. *See Hohn v. State*, 951 S.W.2d 535, 537 (Tex. App.—Beaumont 1997, no pet.) (holding that three-and-a-half-months' notice substantially complied with statute); *Splawn v. State*,

18

949 S.W.2d 867, 870–71 (Tex. App.—Dallas 1997, no pet.) (holding that eighteen months was reasonable.)

Here, Muhammed testified that Appellant had displayed a gun to him at Sid's Food Store "no more than three to six months before" the robbery, which occurred on July 17, 2007. The State's notice alleged that Appellant had displayed a gun to Muhammed "on or about February 1, 2007." Thus, the State's notice falls within the three-to-six-month range to which Muhammed testified at trial.

The purpose of article 37.07, section 3(g) is to avoid unfair surprise, that is, trial by ambush. *Nance v. State*, 946 S.W.2d 490, 493 (Tex. App.—Fort Worth 1997, pet. ref'd). Appellant does not claim surprise or provide any insight as to how he was surprised by Muhammed's testimony. Nor does the record show that Appellant was ambushed. Appellant did not request a continuance to allow him to prepare for Muhammed's cross examination, and in fact, Appellant conducted a thorough cross-examination. We hold that the State's notice in this case substantially complied with the date requirement of article 37.07, section 3(g). *See Burling*, 83 S.W.3d at 203; *Hohn*, 951 S.W.2d at 537; *Splawn*, 949 S.W.2d at 871.

Appellant also claims the State's notice failed to specify a location for the extraneous offense. The State's notice, however, clearly states that Appellant

19

had displayed a handgun to Muhammed "at 6809 McCart Avenue, Tarrant County, Texas." This portion of Appellant's complaint, therefore, is incorrect.

## B. Rule 403 Balancing Test

Appellant also contends that the trial court abused its discretion by failing to conduct a rule 403 balancing test.

A trial court's ruling admitting extraneous offense evidence is reviewed for an abuse of discretion. *See Mitchell v. State*, 931 S.W.2d 950, 953 (Tex. Crim. App. 1996). The question for the jury when deciding punishment is what sentence it should assess. *Ellison v. State*, 201 S.W.3d 714, 718 (Tex. Crim. App. 2006); *Haley v. State*, 173 S.W.3d 510, 515 (Tex. Crim. App. 2005). Generally, the jury is entitled to have before it all possibly relevant information about the individual defendant whose fate it must determine. *Cooks v. State*, 844 S.W.2d 697, 735 (Tex. Crim. App. 1992), *cert. denied*, 509 U.S. 927 (1993).

Admissibility of punishment-phase evidence that the trial court deems relevant is still subject to a rule 403 analysis. *See Rogers v. State*, 991 S.W.2d 263, 266–67 (Tex. Crim. App. 1999). Under Texas Rule of Evidence 403, even relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. *See* Tex. R. Evid. 403; *Reese v. State*, 33 S.W.3d 238, 240–41 (Tex. Crim. App. 2000).

20

A trial court is not required to perform a rule 403 balancing test in a formal hearing on the record or even announce that it has conducted the test; once the rule is invoked, the trial court is presumed to have performed the test. *Williams v. State*, 958 S.W.2d 186, 195–96 (Tex. Crim. App. 1997).

In this case, Appellant's sole rule 403 complaint on appeal is that the trial court "did not conduct a balancing test as is required by [r]ule 403." But a silent record does not show that the trial court did not perform the required balancing test, and we presume that it did so before ruling on Appellant's objection. *See Rojas v. State*, 986 S.W.2d 241, 250 (Tex. Crim. App. 1998); *Williams*, 958 S.W.2d at 195–96; *Moyer v. State*, 948 S.W.2d 525, 531 (Tex. App.—Fort Worth 1997, pet. ref'd). The trial court could have properly decided that the probative value of Muhammed's testimony was not substantially outweighed by the danger of unfair prejudice. *See* Tex. R. Evid. 403; *Reese*, 33 S.W.3d at 240–41. We overrule Appellant's third point.

VI. Relevance of Victim's Present Condition

In his fourth point, Appellant contends that the trial court abused its discretion by overruling his rule 401 objection to Ahmad's demonstration before the jury of the degree of movement he had in his legs.

Evidence is relevant if it has any tendency to make the existence of a fact that is of consequence to the determination of the action more probable or less

21

probable than it would be without the evidence.  Tex. R. Evid. 401.  The threshold for relevance is low.  *Ex parte Moreno*, 245 S.W.3d 419, 425 n.20 (Tex. Crim. App. 2008) (citing *Tennard v. Dretke*, 542 U.S. 274, 285, 124 S. Ct. 2562, 2570 (2004)).

Appellant was charged with aggravated robbery.  One of the elements of the State's proof was that Ahmad sustained bodily injury.  Evidence that Ahmad had difficulty using his legs after the shooting made it more probable that he had suffered bodily injury.

Appellant argues, though, that the evidence was not relevant because the State had already proven the nature of Ahmed's injuries.  But relevancy is absolute:  it is either present or it is not.  *See Rachal v. State*, 917 S.W.2d 799, 816 (Tex. Crim. App. 1996); 1 Steven Goode, et. al., *Texas Practice: Guide to the Texas Rules of Evidence* § 401.3 (3d ed. 2002).  Thus, whether similar evidence was admitted to prove the same facts does not factor into a relevancy determination under rule 401.  *See Woods v. State*, 14 S.W.3d 445, 453 (Tex. App.—Fort Worth 2000, no pet.); *see also Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006) (considering likelihood that evidence will "merely repeat evidence already admitted" in a rule 403 balancing test).  Accordingly, we hold that the trial court acted within its wide discretion by admitting evidence of the degree to which Ahmad could move his legs.  *See*

22

*Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005); *Montgomery*, 810 S.W.2d at 390.  We overrule Appellant's fourth point.

VII.  CONCLUSION

Having overruled Appellant's four points, we affirm the trial court's judgment.


SUE WALKER
JUSTICE

PANEL: LIVINGSTON, C.J.; WALKER and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: May 13, 2010